**THE FLEISHMAN LAW FIRM**
Charles J. Fleishman Bar# 46405
Paul A. Fleishman Bar# 251657
19839 Nordhoff St., Northridge, California 91324
Telephone: (818) 350-6285
FAX: (818) 350-6272
erisa@erisarights.com
Attorneys for **Plaintiff**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LESSER | NO. CV 09-5699 RSWL(CWx) |
| Plaintiff, | PLAINTIFF'S OPENING TRIAL BRIEF |
| vs. | |
| METROPOLITAN LIFE INSURANCE COMPANY, a corporation; NORTHROP GRUMMAN HEALTH PLAN, an ERISA plan; DOES 1 through 10, inclusive, | Hearing Date: October 19, 2010<br>Time: 9 am<br>Courtroom: 21 |
| Defendants. | |

**Table of Contents**

I. Introduction……………………………………………………………………..1

II. Facts of the Claim………………………………………………………….....1

III. Discussion…………………………………………………………………….3

    A.  Defendants Have Sanitized The Administrative Record………..3

    B.  The Option 9 Life Insurance Policy Does Not Require EOI…….5

    C.  Any Requirement Of Evidence Of Insurability As A Condition Of Coverage Has Been Waived By Defendants………………………….8

IV. Conclusion…………………………………………………………………….10

## **Authority Cited**

1. *Burger v. Life Ins. Co.*, 103 F.Supp.2d 1344, 1348 (N.D.Ga. 2000)………..8

2. *Furleigh v. Allied Group Inc.*, 281 F.Supp.2d 952, 973 (N.D.Iowa 2003)….9

3. *Gaines v. Sargent Fletcher*, 329 F.Supp.2d 1198, 1222 (C.D.Cal, 2004)….7-9

4. *Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375, 380-81 (2d Cir. 2002)..9

5. *Pitts v. Am. Sec. Life*, 931 F.2d 351, 357 (5th Cir. 1991)…………………….9

6. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 645 (5th Cir. 1999)……………………………………………………………………………9

# I. INTRODUCTION

This case arises from a life insurance claim submitted by Mrs. Lesser soon after her husband passed away.

Mr. Lesser applied online for an optional life insurance policy called Option 9 through his employer Northrop Grumman.  Option 9 was for $600,000 and was available to employees without evidence of insurability.

Mr. Lesser paid the premiums for Option 9 life insurance until his death.  Mr. and Mrs. Lesser were also sent multiple documents indicating that he was covered under Option 9.  Mr. and Mrs. Lesser were never sent anything indicating that Mr. Lesser's application was unsatisfactory until after Mr. Lesser died and Mrs. Lesser filed her claim.

Mrs. Lesser was her husband's sole beneficiary.  After filing her claim she was paid $176,000 in life insurance benefits by Metropolitan Life Insurance Company (MetLife).  MetLife denied her claim for the Option 9 benefits on September 29, 2008, and her appeal of that denial on November 20, 2008.  Subsequently Mrs. Lesser filed this action

# II. FACTS OF THE CLAIM

Mr. Lesser was employed by Northrop Grumman until his death on May 21, 2008.  Northrop Grumman had a life insurance plan for its employees from MetLife.

In late April or early May of 2007, Mr. Lesser applied online for supplemental optional life insurance coverage in the amount of $600,000.  This option was listed as Option 9.  The Option 9 election was available to employees without evidence of insurability. AR 127, Defendants' Exhibit B.  Mr. Lesser paid premiums (in the form of payroll deductions) for the optional life insurance policy for 10 months until his death on May 21, 2008.  AR 128, 27-29.

Before Mr. Lesser's death, he and his wife received a "Northrop Grumman Health and Welfare Beneficiary Confirmation Notice" dated January 7, 2008 indicating that Mrs. Lesser was the sole beneficiary of the optional employee life insurance policy and that she was entitled to 100% of the benefit. AR 31.

On April 7, 2008 they were sent a "Northrop Grumman Health and Welfare Annual Enrollment Worksheet" (Worksheet) that stated Mr. Lesser was currently covered by optional employee life insurance Option 9, providing $600,000 coverage. The Worksheet had no requirement of evidence of insurability for Option 9. See Exhibit 1.

Mr. Lesser also received a document called "paying for your benefits" which reported how much was being deducted from his pay check to pay for his optional life insurance. See Exhibit 2.

Mrs. Lesser was the sole beneficiary of her husband's life insurance policy. AR 30-31. When Mr. Lesser died, on May 21, 2008, Mrs. Lesser became entitled to basic life insurance benefits and $600,000 in Option 9 life insurance benefits. AR 42, Exhibits 1 and 5. On June 16, 2008 Mrs. Lesser sent MetLife her claim for benefits under the Plan. AR 10. Thereafter, MetLife paid Mrs. Lesser $176,000 of life insurance benefits[1]. On September 29, 2008, MetLife denied Mrs. Lesser's claim

---

[1] Defendants' have made contradictory statements regarding the reason for paying Mrs. Lesser $176,000. Prior to this litigation MetLife claimed that $88,000 of it was benefits owed under Mr. Lesser's optional life insurance policy. AR 32. The only optional life insurance policy which Mr. Lesser was covered under was the Option 9 life insurance policy. Exhibit 1. Defendants now claim that Mr. Lesser was not covered under the Option 9 life insurance policy. Why then did MetLife pay a portion of the benefits provided by that policy? On the other hand, in Defendants' Proposed Statement of Uncontroverted Facts, the second statement of fact claims that the entire $176,000 was "for basic life insurance benefits." Either the entire $176,000 was paid to Mrs. Lesser by MetLife under the Basic Life insurance policy, in which case she is still owed the entire $600,000 under Option 9, or $88,000 was paid under the Basic policy and $88,000 was paid under Option 9 and she is now owed only $512,000. If the latter is true, why would MetLife have paid her $88,000

for the life insurance benefits provided by Option 9 based on a lack of evidence of insurability. AR 32.

On October 24, 2008 Mrs. Lesser appealed MetLife's denial of the Option 9 benefits. See Exhibit 3. On November 20, 2008 MetLife denied Plaintiff's appeal based solely on a lack of evidence of insurability. See Defendants' Exhibit B. Thereafter Mrs. Lesser filed this action.

### III. DISCUSION

### A. Defendants Have Sanitized The Administrative Record.

Defendants have failed to provide this court with the entire administrative record. Plaintiff has provided several documents to the court that Defendants have failed to provide (Plaintiff's Exhibits 1, 2, 3, 5, and 8). We know that MetLife had these documents at the time it made its claim decision. Mrs. Lesser sent Exhibits 1-3 to MetLife on October 24, 2008; the California department of insurance (DOI) sent MetLife Exhibits 1, 2, and 8 on October 27, 2008 (see Exhibit 7); and Exhibit 5 was stamped by MetLife on June 11, 2008.

Besides all this smoking gun evidence that MetLife had possession of documents supporting Mrs. Lesser's claim during the claims process, documents which Defendants now dishonestly claim they only became aware of for the first time during this litigation (See Defendants' Opposition to Plaintiff's Motion for Leave To File a Second Amended Complaint p.21/11-13), the record Defendants have provided evidences its own incompleteness.

1. Where is the DOI inquiry?

Defendants argue that the November 20, 2008 letter (Defendant's exhibit B) to Mrs. Lesser, purporting to uphold the denial of her claim after reviewing new documents Mrs. Lesser provided, was not an appeal denial. Instead Defendants

---

under Option 9 if her husband was not covered by Option 9? The Defendants should explain the contradiction, if they can.

contend that the letter was merely a response to a DOI inquiry. See Defendants' Summary Judgment Brief p. 14/26-28. Yet, the administrative record provided by Defendants does not contain a DOI inquiry. In fact, there is no correspondence between DOI and MetLife prior to the November 20 letter in the record provided by Defendants. This is especially unusual since there are letters from the DOI to MetLife in the record that were sent after the November 20 letter. AR 44, 56, 164. Why haven't Defendants provided the DOI inquiry?

2. Where is the online application Mr. Lesser completed to enroll in Option 9?

The Defendants have failed to provide Plaintiff or the court with a copy of the online application for Option 9 life insurance that Mr. Lesser filled out. We know from the record that the application made a $600,000 optional life insurance election available without evidence of insurability. AR 127. We know that the only optional life insurance policy Mr. Lesser was covered under was Option 9 for $600,000. Exhibits 1, 5. Why haven't defendants provided a print out of his application form?

3. Where is the original impact list listing Mr. Lesser?

The record indicates that Mr. Lesser was placed on an "original impact list" for the issue of the $600,000 election made available without evidence of insurability, "but he was missed in the analysis." AR 127. Where is that original impact list?

4. Where are the records of phone calls Mrs. Lesser made to MetLife?

Also missing from the record provided by Defendants are records of the phone calls between MetLife and Mrs. Lesser. There are several references to these calls in the provided record. AR 8, 19, 35. Also the Chronology of Events attached hereto as Exhibit 8 lists multiple phone calls from Plaintiff to MetLife. Why haven't Defendants provided MetLife's telephone logs?

5.  Why wasn't the letter sent by MetLife to Mrs. Lesser on November 20, 2008 in the administrative record provided by Defendants?

Defendants did not provide Plaintiff with the November 20, 2008 letter denying Mrs. Lesser's appeal as part of the administrative record. Instead Plaintiff had to provide it to Defendants along with other documents Defendants had withheld from the record. Exhibit 4. Even then Defendants did not include it in the administrative record it provided to the court. Instead Defendants provided its sanitized version of the administrative record to the court as Exhibit A, and provided the November 20 letter as a separate Exhibit B.[2] Why didn't Defendants provide MetLife's November 20 letter, upholding it previous decision to deny Mrs. Lesser's claim, as part of the administrative record?

Defendants acted in bad faith by not providing either the plaintiff or the court with the entire administrative record. Defendants then compounded their bad faith by bringing a summary judgment motion based entirely on the absence of documents they purposefully omitted.

### B.  The Option 9 Life Insurance Policy Does Not Require EOI

Option 9 is unlike any optional life insurance policy found in the plan documents. Option 9 is not mentioned in any of the documents provided by Defendants. It is not contained in any of the plan schedules and would not fit in those schedules. AR 84-85. Unlike the other life insurance policy options (options

---

[2] Defense counsel only told Plaintiff's counsel that Defendants were going to provide the November 20 letter to the court in an e-mail sent on June 16, only hours before Defendants filed the administrative record and their motion for summary judgment with the court. In that email Defense counsel was still giving Plaintiff the run around by claiming that "[MetLife] is still trying to assess whether the other documents [provided in Plaintiff's supplemental disclosures three months earlier] were in front of MetLife at any point during the claim process." Exhibit 6 page 2.

1-8) the amount of insurance available through Option 9 is not a multiple of the insured's yearly salary. Instead it is simply $600,000.

There are very few documents before the court that refer to Option 9. This is because Defendants sanitized the administrative record they provided to the court so that it does not contain any mention of Option 9. However, we know that Mr. Lesser was covered under the Option 9 life insurance policy for $600,000 because of several documents that were sent to Mr. and Mrs. Lesser that should be in the administrative record. See Exhibits 1, 5. Further, although Defendants attempted to hide these documents from the court, we know that MetLife was in possession of them when it adjudicated Mrs. Lesser's claim. See Exhibits 3, 7.

Premiums were deducted from Mr. Lesser's paycheck for optional life insurance (AR 128, 27-29), and The Northrop Grumman Health and Welfare Annual Enrollment Worksheet sent to Mr. Lesser on April 7, 2008 confirmed his coverage under Option 9 for $600,000 (Exhibit 1 page 2). It seems the Plan was satisfied with Mr. Lesser's application for Option 9 so long as Mr. Lesser was paying premiums.

The 2008 worksheet also listed Option 9 among its Optional Employee Life policies. Exhibit 1, page 5. The worksheet indicated that there was no evidence of insurability required for Option 9.

One of the many documents Defendants have failed to provide the court is the online application Mr. Lesser filled out in order to gain coverage under Option 9. However, we know that the application did not require evidence of insurability because one of Defendant's emails from September 2, 2008 states, "This was an issue where a 600K election was available to employees without E[vidence] O[f] I[nsurability]." AR 127.

The Plan collected premiums from Mr. Lesser up until his death. AR 128. The Plan provided Mr. Lesser paperwork indicating that he was covered under the Option 9 life insurance policy. See Exhibit 1. The Plan sent Mr. Lesser a form indicating how much money was being deducted from his paychecks as premiums

for the optional life insurance policy. See Exhibit 2. The Plan sent Mrs. Lesser notification that she would receive 100% of the benefit on Mr. Lesser's optional life insurance policy. AR 31.

In *Gaines v. Sargent Fletcher*, 329 F.Supp.2d 1198, 1216 (C.D.Cal, 2004), the plaintiff applied for an optional life insurance policy for his wife through his employer. When the plaintiff's wife passed away, the defendant ERISA plan paid only a portion of the optional life insurance benefits. The defendants maintained that the optional life insurance benefits were not payable because plaintiff had failed to provide evidence of his wife's good health as required by the plan. According to the court the issue before it was simple.

> "The Court must determine whether the defendant-fiduciaries may shift to a plan beneficiary the harm resulting from their own failure to properly advise the beneficiary of the conditions necessary to obtain plan benefits, even when the fiduciaries are in a position of superior knowledge. The Court concludes that when, as is the case here, ERISA fiduciaries breach their respective duties to a beneficiary and render decisions inconsistent with the reasonable expectations of that insured, the answer is unequivocally no." Id. at 1204

The court noted that,

> "In particular, Plaintiff was not notified in writing, or otherwise, that his application for enrollment was disapproved for any reason, including the failure to supply a personal health statement. To the contrary, in December 2002, Plaintiff was sent a benefits confirmation report by Sargent Fletcher." Id. at 1208.

In this case the Lessers were not notified that Mr. Lesser's application for Option 9 life insurance was lacking until after Mr. Lesser had died and Mrs. Lesser had submitted her claim for the benefits provided by Option 9. To the contrary, Mr. and Mrs. Lesser were sent several documents providing confirmation that Mr. Lesser was covered under Option 9 and that Mrs. Lesser was entitled to 100% of the benefits provided by Option 9. AR 31, Exhibits 1 and 2.

The *Gaines v. Sargent Fletcher* court also concluded that,

> "A plan participant would also reasonably conclude that he or she would be notified of the disapproval of his or her application within a reasonable time

after the application was made, certainly before several months of premium payments were deducted and accepted and undoubtedly before a claim was made. Under such circumstances, a plan participant could reasonably assume that his application for coverage has been approved." Id. at 1218-1219.

According to the court,

"This conclusion is supported by state court insurance jurisprudence. California courts, employing the reasonable expectations doctrine or ordinary person standard where the contract terms were ambiguous, have consistently held that coverage arises immediately upon receipt of the contemplated application and the first premium payment. Any "satisfaction" proviso merely gives the insurance company the right to terminate the contract before issuing the policy if dissatisfied and, in any event, termination is not effective until the insurer communicates the rejection by appropriate notice and refunds the payment to the insured. Once a claim is submitted, however, the right to terminate ceases unless there is evidence of fraud." Citations Omitted. *Gaines v. Sargent Fletcher* at 1219 FN14.

In this case, Mr. Lesser paid premiums for Option 9 life insurance for 10 months, until he died. So long as Mr. Lesser was paying premiums Defendants never told him or his wife that there was anything wrong with his application or that evidence of insurability was required for the Option 9 life insurance policy. Only when the time came for Defendants to pay Mrs. Lesser the benefits did Defendants decide that Mr. Lesser was not covered.

## C. Any Requirement Of Evidence Of Insurability As A Condition Of Coverage Has Been Waived By Defendants

Defendants do not allege that there was anything wrong with Mrs. Lesser's claim. Defendants allege there was a fault with Mr. Lesser's application. Defendants are trying to retroactively deny Mr. Lesser's application for the life insurance policy Option 9 after sending him confirmations that he was covered under that option and collecting premiums from him up until his death. Defendants have waived any right to deny Mr. Lesser's application they may have had.

The doctrine of waiver has been employed by a number of circuits in ERISA cases. *Burger v. Life Ins. Co.*, 103 F.Supp.2d 1344, 1348 (N.D.Ga.2000); *Pitts v.*

8

*Am. Sec. Life*, 931 F.2d 351, 357 (5th Cir.1991); *Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 645 (5th Cir.1999); *Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375, 380-81 (2d Cir.2002); *Furleigh v. Allied Group Inc.*, 281 F.Supp.2d 952, 973 (N.D.Iowa 2003); *Gaines v. Sargent Fletcher*, 329 F.Supp.2d 1198, 1222 (C.D.Cal, 2004).

Waiver is the voluntary or intentional relinquishment of a known right. An e-mail from September 2, 2008 indicates that MetLife was aware before Mr. Lesser's death of an "issue where a 600K election was available to employees without E[vidence] O[f] I[nsurability]." The E-mail further indicates that while Plaintiff's husband was included on the original impact list for the issue, "he was missed in the analysis." AR 127. Also, a MetLife computer readout stamped June 11, 2008 indicates that from 7-1-2007 to 5-21-2008 Mr. Lesser was covered under the Option 9 life insurance for $600,000. The printout further indicates that this coverage was "current as of 6-2-2008". See Exhibit 5. This printout is one of many documents left out of the record provided to the court by Defendants.

**Defendants knew that Mr. Lesser had applied for the Option 9 life insurance policy.** Premiums were collected for the Policy, Mr. Lesser's name was on a list of people who had similarly applied for Option 9 and MetLife had him in its computer system. Yet, Defendants never told him there might be a problem with his application.

Defendants not only waived any right to deny Mr. Lesser's application by failing to deny it before his death, but also through the affirmative acts taken on behalf of the plan that Plaintiff and her husband relied on. Mr. Lesser was provided an enrollment website that did not state evidence of insurability as a requirement for Option 9; Premiums for the Option 9 life insurance coverage were deducted from Mr. Lesser's paychecks; and Mr. and Mrs. Lesser were sent notices on behalf of the plan indicating that he was fully enrolled in Option 9. As a result of their reasonable reliance on the actions of the Defendants, Mr. and Mrs. Lesser

never took any further action to perfect coverage under the Plan or purchase other insurance.  And Mr. Lesser continued to pay premiums for Option 9.

## IV.  CONCLUSION

For the aforementioned reasons Plaintiff should be awarded the amount of Option 9 benefits which have been withheld by Defendants, prejudgment interest on that amount, and attorney's fees.

Respectfully submitted,

 /s/Paul Fleishman
PAUL FLEISHMAN

Dated: September 21, 2010