Robert K. Renner (155283), rrenner@bargerwolen.com
Scott E. Calvert (210787), scalvert@bargerwolen.com
BARGER & WOLEN LLP
19800 MacArthur Boulevard, 8th Floor
Irvine, California 92612
(949) 757-2800 / Fax: (949) 752-6313

Attorneys for Defendants
Metropolitan Life Insurance Company and
Northrop Grumman Health Plan

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LESSER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a corporation; NORTHROP GRUMMAN HEALTH PLAN, an ERISA plan; DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO.: CV 09-5699 RSWL(CWx)<br><br>**DEFENDANTS' OPENING TRIAL BRIEF**<br><br>Trial<br>DATE:      October 19, 2010<br>TIME:       9:00 a.m.<br>CTRM:      21<br><br>FAC Filed: March 10, 2010 |

i:\office7\7197\267\10pleadings\11 opening brief - final.doc

# **TABLE OF CONTENTS**

**PAGE**

1.   INTRODUCTION ........................................................................................ 1

2.   METLIFE'S CLAIM DECISION WAS REASONABLE BECAUSE
     DECEDENT WAS NEVER ELIGIBLE FOR OPTIONAL LIFE
     INSURANCE WITHOUT FIRST SUBMITTING EVIDENCE OF
     INSURABILITY ......................................................................................... 4

     A.   The Plan Requires That Evidence Of Insurability Accompany
          Decedent's Request To Increase His Life Insurance Coverage
          Beyond The Basic Coverage Offered By Northrop ............................. 4

     B.   Contrary To The Plan's Terms, Decedent Attempted To Increase His
          Coverage Without Providing Evidence Of Insurability ...................... 6

     C.   Having Never Received (Or Approved) Decedent's Evidence Of
          Insurability, MetLife Denied Lesser's Claim For Optional Life
          Insurance Benefits ........................................................................... 8

     D.   Contrary To The Plan (And Contrary To ERISA), Lesser Never
          Pursued An Administrative Appeal Of MetLife's Initial Claim
          Decision ........................................................................................... 9

3.   LESSER FAILED TO EXHAUST HER ADMINISTRATIVE
     REMEDIES ............................................................................................. 13

     A.   ERISA Requires That A Participant/Beneficiary Exhaust
          Administrative Remedies Before Bringing A Lawsuit ..................... 14

     B.   Lesser Does Not Qualify For Any Of The Limited Exceptions To
          The Exhaustion-Of-Administrative-Remedies Requirement ............. 16

4.   METLIFE'S CLAIM-DENIAL DECISION SHOULD BE REVIEWED
     UNDER THE HIGHLY DEFERENTIAL "ABUSE OF DISCRETION"
     STANDARD OF JUDICIAL REVIEW .................................................... 17

5.   METLIFE'S CONCLUSION THAT LESSER IS NOT ENTITLED TO
     OPTIONAL LIFE INSURANCE BENEFITS UNDER THE PLAN IS
     REASONABLE ........................................................................................ 18

     A.   MetLife's Decision Did Not Conflict With The Plain Language Of
          The Plan ........................................................................................... 19

     B.   MetLife's Denial Decision Was Supported By Substantial Evidence
          In The Claim File ............................................................................. 20

     C.   MetLife Fully Explained The Basis Of Its Decision ......................... 21

6.   METLIFE WAS NOT ESTOPPED FROM ENFORCING THE
     UNAMBIGUOUS TERMS OF THE PLAN SIMPLY BECAUSE
     PREMIUMS WERE MISTAKENLY DEDUCTED FROM
     DECEDENT'S PAYCHECKS ................................................................. 21

1

7.    CONCLUSION ..................................................................................................... 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) ......17, 18

*Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980) ................................................4, 15

*Barnes v. Lacy*, 927 F.2d 539 (11th Cir. 1991) ........................................................5

*Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992) .........................................17

*Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461 (9th Cir. 1997) ............14

*Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600 (9th Cir. 1996) ....19

*Castello v. Gamache*, 593 F.2d 358 (8th Cir. 1979) ................................................5

*Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478 (9th Cir. 1995) ..................................................................................15, 16

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ................................17

*Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999) ............................19

*Glaus v. Kaiser Foundation Health Plan*, 2009 WL 2905961 (N.D. Cal. September 8, 2009)................................................................................14

*Greany v. Western Farm Bureau Life Insurance Co.*, 973 F.2d 812 (9th Cir. 1992)................................................................................................21, 22

*Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302 (9th Cir. 1986) ..............................................................................................19

*Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480 (9th Cir. 1990) ...17

*Jordt v. Clerks and Lumber Handlers Pension Fund*, 2006 WL 228953 (N.D. Cal. January 30, 2006).......................................................................15, 21, 22

*Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir. 1996) ..............................................22

*McDaniel v. Chevron Corp.*, 203 F.3d 1099 (9th Cir. 2000) ..........................18, 19

*Meditrust Fin. Servs. Corp. v. The Sterling Chems., Inc.*, 168 F.3d 211 (5th Cir. 1999) ...............................................................................................19

*Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008)...................3, 18

*Montour v. Hartford Life & Accident*, 582 F.3d 933 (9th Cir. 2009) ................3, 17

*Noble v. Union Bank of California Long Term Disability Benefits*, 2008 WL 3184760 (N.D. Cal. August 4, 2008)..........................................................14

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-iii-

*Schultz v. Metropolitan Life Ins. Co*., 872 F.2d 676 (5th Cir. 1989) ..........................5

*Snow v. Standard Ins. Co.*, 87 F.3d 327 (9th Cir. 1996) .............................18, 19, 21

*Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993)....................22

*Wells v. Reliance Std. Life Ins. Co.*, 2008 U.S. App. LEXIS 14430 (9th Cir.
    July 3, 2008) ....................................................................................................18

*Williams v. American Casualty Co.*, 6 Cal. 3d 266 (1971) .......................................7

**Statutes**

29 U.S.C. § 1001 *et seq.* ............................................................................................1

## 1.   **INTRODUCTION**

The dispute in this case arises from Barry Lesser's ("Decedent") attempt to dramatically increase his life insurance coverage less than a year before his death, when he had a three-year history of renal disease and a nine-year history of diabetes. Although the unambiguous terms of Defendant Northrop Grumman Health Plan (the "Plan") required that he submit evidence of insurability and be approved for the additional coverage, Decedent made no attempt to do so.  Nevertheless, his wife, Plaintiff Robin Lesser ("Lesser"), seeks to recover additional life insurance benefits, essentially arguing that Decedent, by failing to comply with the terms of the Plan to submit a Statement of Health, should be put in a better position than other participants who complied with the terms of the Plan and had coverage rejected based on their health status.

In July 2007, after more than 27 years as an employee of Northrop Grumman Corporation ("Northrop"), and knowing that he was in deteriorating health, Decedent attempted to drastically increase his life insurance coverage.  Decedent had basic life insurance coverage for $88,000, but applied for an additional $600,000 in coverage under the Plan's Optional Life insurance provisions.[1]  In this situation, the Plan requires that evidence of insurability in the form of a Statement of Health be presented to Defendant Metropolitan Life Insurance Company ("MetLife") for review and approval.[2]  Evidence of insurability is required in order to keep benefit costs down for the entire group by avoiding exactly the situation presented here – an insured significantly increasing his life insurance coverage when he knows or suspects that he is in deteriorating health.  Unfortunately, due to a processing error by

---

[1]  The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").
[2]  MetLife administers the claims for Optional Life insurance benefits under the Plan, and issued the group insurance policy to Northrop that funds benefits under the Plan.

Northrop's third-party recordkeeper (not either Defendant), and in contrast to the unambiguous terms of the Plan, premiums were deducted from Decedent's paycheck for additional coverage even though he failed to present evidence of insurability.

Under the law, Decedent is charged with the knowledge that he was required to present evidence of insurability if he wanted to increase his life insurance coverage. The Plan contains *specific and unambiguous language* that evidence of insurability is required to increase coverage *in any amount* after an employee's initial enrollment period following his or her hire date. Additionally, in April 2007, less than 3 months before his attempt to increase coverage, Decedent received information from Northrop explaining that he would need to present evidence of insurability if he wanted to increase his coverage by any amount.

On May 21, 2008, less than a year after applying for the additional coverage, Decedent passed away from asystole (*i.e.*, a dire form of cardiac arrest), with the death certificate noting that the conditions leading to his death included hypotension, end stage renal disease, diabetes mellitus, hypercholesterol and chronic sinusitis. Shortly thereafter, Lesser submitted her claim for life insurance benefits under the Plan. MetLife paid her $88,000 in basic life insurance benefits to which she was entitled.[3] However, in accordance with the unambiguous terms of the Plan, MetLife denied Lesser's request for an additional $512,000 in optional life insurance benefits because Decedent did not properly enroll in that coverage prior to his death.

Defendants submit that MetLife's claim decision was reasonable, and it should be upheld under the "abuse of discretion" standard of judicial review. The Plan

_____

[3]  Lesser was mistakenly paid an additional $88,000 in Optional Life insurance benefits. If this Court were to credit any of the claimant's arguments, that extra $88,000 would need to be deducted from any recovery.

documents confer broad discretion upon MetLife to determine eligibility for and entitlement to life insurance benefits, as well as the authority to interpret the Plan's terms.  Given the well-established law of this circuit (and especially in light of the United States Supreme Court's opinion in *MetLife v. Glenn*, 128 S. Ct. 2343 (2008) and the Ninth Circuit's decision in *Montour v. Hartford Life & Accident*, 582 F.3d 933 (9th Cir. 2009)), MetLife's decision must therefore be reviewed for abuse of discretion.  MetLife's decision was supported by the unambiguous terms of the Plan and substantial evidence in the record.  This Court should so conclude, and judgment should be entered in Defendants' favor.

However, Defendants also contend that Lesser's lawsuit is premature because she did not exhaust her administrative remedies as required by the terms of Plan. Lesser's failure to exhaust means that the initial claim decision rendered by MetLife is not yet ripe for judicial review.

The Plan details the process a beneficiary such as Lesser must follow in order to properly submit a claim for benefits.  Should the claim be denied, the Plan also explains the appeal process that must be completed before a lawsuit can be properly filed under ERISA.  Following MetLife's initial denial of her claim, Lesser never pursued that decision through the administrative appeal process detailed in the Plan. While Lesser did petition the California Department of Insurance ("DOI") to review MetLife's claim decision, those efforts were separate and apart from the Plan's (and ERISA's) very specific requirement that she exhaust her administrative remedies. Stated directly, Lesser's correspondence with the DOI did not constitute an appeal of the claim under the Plan; she therefore has not exhausted her administrative remedies and no final claim determination exists for this Court to review.

Lesser's failure to make any effort to complete the appeal process is wholly inconsistent with her obligation to exhaust administrative remedies under ERISA. Ample Ninth Circuit authority makes clear that Lesser's exhaustion of administrative remedies is a prerequisite to her bringing a lawsuit. *See, e.g., Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980). A claimant such as Lesser is required to exhaust her administrative remedies, so that the claim administrator learns the specific reasons behind the disagreement with the claim decision and can evaluate any additional information offered in further support of the claim. Under the doctrine of exhaustion of administrative remedies, the Court should not substitute itself for the claim fiduciary selected by the plan sponsor and make a decision before the claim process is completed. Before judicial review can begin, Lesser's claim for benefits must be fully reviewed by MetLife. It was not because Lesser did not begin, much less complete, the appeal process. Accordingly, Defendants respectfully submit that this Court should find that this lawsuit was filed prematurely, and they request judgment in their favor.

## 2. METLIFE'S CLAIM DECISION WAS REASONABLE BECAUSE DECEDENT WAS NEVER ELIGIBLE FOR OPTIONAL LIFE INSURANCE WITHOUT FIRST SUBMITTING EVIDENCE OF INSURABILITY

### A. The Plan Requires That Evidence Of Insurability Accompany Decedent's Request To Increase His Life Insurance Coverage Beyond The Basic Coverage Offered By Northrop

Decedent was hired by Northrop in 1979 (33),[4] continuing his employment until his death on May 21, 2008 (13). As part of Northrop's benefit package, most

_____

[4] All bates-number references are to those documents attached as Exhibit "A" to the Declaration of Pati Casey ("Casey Dec."), and numbered with the prefix "MET-LES." For convenience, the prefix and any intervening zeroes have been deleted, *i.e.* "MET-LES 0001" will be referred to as "1."

employees, including Decedent, "regularly scheduled to work 20 or more hours each week" automatically qualify for Basic Life insurance coverage (equal to one year's salary, rounded up to the nearest $1,000.00) and have the option of purchasing additional coverage through the Optional Life insurance program.  (84-85, 90)

Decedent had basic life insurance coverage of $88,000 (48),[5] and for 27 years, he apparently was satisfied with that level of coverage.  In July 2007, he sought to add optional life insurance coverage, years after his initial eligibility ended.  (1) Decedent is charged with the knowledge[6] that under the Plan, he could not simply choose to increase his coverage by paying additional premiums; rather, he was required to submit evidence that he qualified for such coverage given his physical condition and overall health.  The Plan makes clear that when seeking optional life coverage more than 31 days after initial eligibility (101), a participant such as Decedent is required to provide evidence of insurability at his or her expense.  In a section entitled "ELIGIBILITY PROVISIONS:  INSURANCE FOR YOU," the Plan explains that in order to participate in the Optional Life insurance portion of the Plan, a participant must complete the required form, and:

> You must give evidence of Your Insurability satisfactory to Us[7] at Your expense if You are required to do so under the section entitled EVIDENCE OF INSURABILITY.  (91)

The Plan further explains that additional evidence of insurability is required, noting "changes to Your insurance made during an annual enrollment period **will take effect** … [when] … **We determine that You are insurable**, [and] **such insurance will take effect on the date We state in Writing**."  (92; emphasis in original)

_____
[5]  Decedent's base earnings at the time of his death were $87,464.00 per year.  (16)
[6]  It is by now solidly established that plan participants are charged with constructive notice of the contents of the summary plan description.  *Schultz v. MetLife*, 872 F.2d 676, 680 (5th Cir. 1989); *Barnes v. Lacy*, 927 F.2d 539, 543 (11th Cir.), *cert. denied*, 502 U.S. 938 (1991); *Castello v. Gamache*, 593 F.2d 358, 360-61 (8th Cir. 1979).
[7]  In the Plan, "We," "Us" and "Our" all mean MetLife.  (89)

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

The Plan also details the situations when a participant such as Decedent is required to provide "evidence of insurability satisfactory to Us," including, in relevant part:

> 2. if You make a request during an annual enrollment period to increase the amount of Your Optional Life Insurance.
>
> **If You do not give Us evidence of insurability** or the evidence of insurability is not accepted by Us as satisfactory, the amount of **Your Optional Life Insurance will not be increased.**
>
> …
>
> 4. if You make a late request for Optional Life Insurance.  A late request is one made more than 31 days after You become eligible.
>
> **If You do not give Us evidence of insurability** or the evidence of insurability is not accepted by Us as satisfactory, **You will not be covered for Optional Life Insurance.**  (101; emphasis added)

In addition to the language in the Plan, Decedent was specifically informed of his responsibility to provide evidence of insurability less than three months before he attempted to increase his coverage.  (47-53)  On April 11, 2007, Northrop mailed him a document entitled "Health Welfare Annual Enrollment Worksheet" detailing his current coverage and explaining that in order to obtain *any* amount of Optional Life insurance coverage, "Evidence of Insurability is required."  (51)

## B.   Contrary To The Plan's Terms, Decedent Attempted To Increase His Coverage Without Providing Evidence Of Insurability

In July 2007, Decedent attempted to obtain Optional Life insurance.  Due in part to a processing error by the employer's third-party recordkeeper, premiums were deducted from Decedent's paycheck despite the fact that he never submitted evidence of his insurability, and MetLife never approved his request or informed him in writing that his Optional Life coverage had begun.  (127-128)  Decedent

unfortunately passed away while steps were being taken to rectify the processing error, but before the process was complete.  (127)

Decedent's failure to provide evidence of his insurability is not surprising given the information contained in the claim file that he had numerous ongoing health issues.  His death certificate notes that while the immediate cause of his May 21, 2008 death was "asystole" (*i.e.*, a dire form of cardiac arrest), conditions leading to the cause of death included hypotension, end stage renal disease, diabetes mellitus, hypercholesterol and chronic sinusitis.  (13)  These are each *chronic conditions* of which Decedent was undoubtedly aware in July 2007 (less than a year before his death) when he attempted to dramatically increase his life insurance coverage. *Indeed, the death certificate notes that Decedent suffered from renal disease for 4 years and diabetes for 10 years*.  (13)  If he had submitted evidence of insurability in compliance with the terms of the Plan, this medical information undoubtedly would have precluded him from obtaining additional coverage.  Once the error was discovered, Lesser was refunded the $1,779.92 in premiums that had been deducted from Decedent's paychecks.  (120)[8]

_____

[8] These premiums were collected by, and at the direction of, Northrop and its third-party administrator, and not either of the named Defendants.  As explained in *Williams v. American Casualty Co.*, 6 Cal. 3d 266 (1971), at least two stages of premium payment occur in a group insurance context:  (1) payment from the employee to the employer, normally by means of payroll deduction; and (2) payment from the employer to the insurer.  The collection of premium payments from the individual employees and the forwarding of those payments to the insurer is recognized as "one of the primary functions universally performed by the employer for the insurer." *Id*. at 273.  The group premiums are forwarded to MetLife without any breakdown of individual employee amounts.  That is, the bulk premiums are not accompanied by a monthly list of individual participants or their level of coverage. Only when an employee dies is MetLife notified of the potential coverage at issue.

## C. **Having Never Received (Or Approved) Decedent's Evidence Of Insurability, MetLife Denied Lesser's Claim For Optional Life Insurance Benefits**

Following Decedent's death, Lesser submitted claim forms requesting life insurance benefits under the Plan.  (9-12)[9]  After reviewing Lesser's claim form, information from Northrop related to Decedent's July 2007 request to enroll in the Optional Life insurance program[10] and the relevant Plan provisions, MetLife informed Lesser, by letter dated September 29, 2008, that while she received $176,000 in life insurance benefits (plus interest), it was denying her request for the additional $512,000 in Optional Life insurance benefits that she sought.  (32-33)

In the letter, MetLife explained that Decedent did not enroll in voluntary (optional) life coverage on his 1979 date of hire, but rather he only recently attempted to increase his coverage to $600,000.  MetLife further explained that "the Northrop Grumman benefits plan requires Statement of Health approval for any amount exceeding 1 times your Base Annual Earnings during a subsequently annual enrollment period," and that this information is "in the [Plan's Summary Plan Description] as well as the enrollment packet he received from the Northrop Grumman Benefits Center."  Under the terms of the Plan, Decedent "was on notice that an election of that nature would require approved evidence of insurability."  Thus, Decedent's eleventh-hour attempt to add coverage before his death did not take effect because "[n]either the employer nor the MetLife Statement of Health Unit has any record of such an approval."  (33)

---

[9] It is undisputed that Lesser is the named beneficiary for any life insurance benefits due under the Plan.

[10] MetLife is not the recordkeeper for the Plan, and, thus, does not receive enrollment documents.

MetLife thus informed Lesser that it was denying her claim for further life insurance benefits, but that under ERISA and the terms of the Plan, she had the right to administratively appeal the initial claim decision.  MetLife also explained what information she should provide in support of her appeal:

> Under ERISA, you have the right to appeal this decision within sixty (60) days after the receipt of this letter.  To do so, you must submit a written request for appeal to MetLife at the address above.  Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you deem appropriate to enable MetLife to give your appeal proper consideration.  Upon your written request, MetLife will provide you with a copy of the records and/or reports that are relevant to your claim.  (33)

### D. Contrary To The Plan (And Contrary To ERISA), Lesser Never Pursued An Administrative Appeal Of MetLife's Initial Claim Decision

The Plan documents explain the process by which a claimant can pursue a claim for benefits in a section entitled "FILING A CLAIM."  (112)  In the section entitled "CLAIM SUBMISSION," the Plan then details what happens after the claim forms are submitted.  First, in the subsection entitled "Initial Determination," the Plan explains initial claim review process, as follows:

> After MetLife receives your claim for Benefits, MetLife will review your claim and notify you of its decision to approve or deny your claim.
>
> ...
>
> If MetLife denies your claim in whole or in part, the notification of the claims decision will state the reason why your claim was denied and reference the specific Plan provision(s) on which the denial is based.  If the claim is denied because MetLife did not receive sufficient information, the claims decision will describe the additional information needed and explain why such information is needed.  **The notification will also include a description of the Plan review procedures and time limits, including a statement of your right to bring a civil action if your claim is denied after an appeal.**  (118; emphasis added)

Next, in a subsection entitled "Appealing the Initial Determination," the Plan outlines the administrative appeal process:

> In the event a claim has been denied in whole or in part, you or, if applicable, your beneficiary can request a review of your claim by MetLife. This request for review should be sent in writing to Group Insurance Claims Review at the address of MetLife's office which processed the claim within 60 days after you or, if applicable, your beneficiary received notice of denial of the claim. **When requesting a review, please state the reason you or, if applicable, your beneficiary believe the claim was improperly denied and submit in writing any written comments, documents, records or other information you or, if applicable, your beneficiary deem appropriate.** Upon your written request, MetLife will provide you free of charge with copies of relevant documents, records and other information.
>
> MetLife will re-evaluate all the information, will conduct a full and fair review of the claim, and you or, if applicable, your beneficiary will be notified of the decision.
> ...
> If MetLife denies the claim on appeal, MetLife will send you a final written decision that states the reason(s) why the claim you appealed is being denied, references any specific Plan provision(s) on which the denial is based, any voluntary appeal procedures offered by the Plan, and a statement of your right to bring a civil action if your claim is denied after an appeal. Upon written request, MetLife will provide you free of charge with copies of documents, records and other information relevant to your claim. (118; emphasis added)

Lesser did not comply with the terms of the Plan because she never properly appealed MetLife's initial claim decision. While she did correspond with MetLife and file a complaint with the DOI, these acts alone, or in concert, do not constitute administrative appeals under the Plan.[11]

---

[11] Attached as Exhibit "B" to the Casey Dec. is a true and correct copy of the separate regulatory file maintained by MetLife regarding Lesser's complaint to the DOI. Defendants produce these documents not because they were considered as part of the evaluation of Lesser's claim for additional life insurance benefits, but to rebut the unsubstantiated suggestions by Lesser that there exists some discussions between MetLife and the DOI about Option 9. *See, e.g.*, Plaintiff's Reply Brief in Support of Motion for Leave to Amend, p. 8, ll. 26-27. (Docket No. 40) As these records show, no such discussions occurred.

Lesser has asserted that she appealed the adverse claim decision by way of her letter dated October 24, 2008; however, the letter is not a proper appeal of the initial denial decision. *See* Exhibit "3" to Plaintiff's Opposition to Defendants' motion for summary judgment. (Docket No. 27-4) The letter does not include the information needed to initiate a proper administrative review of the initial claim decision and is insufficient to put MetLife on notice to adjudicate an appeal of the claim decision. As Lesser was informed in the September 29, 2008 letter (32-33), the Plan requires that Lesser state why she believes "the claim was improperly decided." (118) No such statement is included in the October 24, 2008 letter. Further, nowhere in the letter does Lesser state that she is appealing the claim decision.

Upon learning of MetLife's claim decision, Lesser's then-counsel sent a November 19, 2008 letter to MetLife stating that Lesser "does not agree with [MetLife's claim] determination." (35) The letter did not state that Lesser wished to appeal the claim determination, nor did it include any of the information MetLife explained it would need to properly conduct an appeal of the claim decision, including, for example, the reason(s) Lesser believed the claim decision was incorrect. (35) Further, no indication is given that Lesser understood she had *already* appealed the claim decision by way of the October 24, 2008 letter. Indeed, the contrary is more accurate – Jacobs says that Lesser is "currently discussing" this matter with MetLife and Suzanne Valera, Associate Insurance Compliance Officer for the DOI.

The letter thus confirms that, rather than following the claim review procedure set forth in the Plan, Lesser instead chose to lodge a complaint with the DOI. As instructed by the DOI, MetLife responded to the DOI's inquiry in a November 20, 2008 letter to Lesser, noting that "this correspondence is in response to your inquiry concerning the Group Life Insurance benefit due on the life of Barry Lesser that you

filed with the State of CA Insurance Commissioner." *See* Declaration of Scott E. Calvert ("Calvert Dec."), Exhibit "B," filed in support of Defendants' motion for summary judgment.  (Docket No. 26)  MetLife then explained its prior decision that "based on the records before MetLife, [Decedent] was not covered for Optional life insurance based on the terms of the Plan."  The DOI complaint triggered a response by MetLife to explain its prior decision; it did not trigger a new investigation of the claim like an appeal under the Plan would have triggered.  Nothing under ERISA or the Plan provides that a complaint to the DOI satisfies the claim-review procedures within the parameters set forth by ERISA and by the Plan.

Lesser also corresponded with Northrop regarding her claim and Decedent's payment of premiums prior to his death.  After MetLife learned that Northrop mistakenly deducted premium payments for the Optional Life insurance coverage, that money ($1,779.92) was refunded to Lesser on December 16, 2008.  (121)  In addition, on March 3, 2009, the Northrop Grumman Benefits Center sent a letter to Lesser explaining the propriety of MetLife's claim decision:

> Our records indicate that your husband elected to increase the amount of his optional life coverage to $600,000 during the 2007-2008 Annual Enrollment period.  Coverage elected during annual enrollment became effective on 07-01-07.
>
> Under the terms of the Northrop Grumman Health Plan ("the Plan"), eligible employees must provide evidence of insurability (EOI) when Optional coverage is increased to greater than five times annual salary or $600,000, whichever is less.  EOI refers to proof that you are in good health at the time you enroll for optional life insurance.  When EOI is required, the employee must complete and submit the EOI form to MetLife (the life insurance company).  Until the EOI is processed by MetLife and approved by MetLife, optional life insurance coverage will be limited to an amount allowed without EOI.  This is clearly indicated in the Summary Plan Description, page 97, copy attached.
>
> Because your husband increased his optional life insurance coverage without EOI approval by MetLife, his life insurance could not be increased and payroll deductions for the new amount should not have been taken.  (169-170)

Lesser did not respond to this letter with any statement that she wished to appeal the claim determination.  Likewise, she never expressed her belief that she had *already* appealed the claim decision and was awaiting MetLife's adjudication of that appeal.

Finally, on March 30, 2009, Lesser wrote to MetLife requesting copies of certain Plan documents.  Yet again, Lesser did not state that she wished to administratively appeal the initial claim-denial decision, did not list the reasons she believed the claim decision was incorrect and did not provide new documents or information in support of her claim.  (58)  Further, Lesser provided no indication that she believed she *already* appealed the claim decision and was awaiting a final claim determination by MetLife.

Rather than initiating an administrative review, Lesser instead chose to file this lawsuit on August 4, 2009.

### 3. LESSER FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

In its ruling upon Defendants' motion for summary judgment, the Court expressed its view that a genuine issue of material fact existed as to whether Lesser properly appealed MetLife's claim decision, thereby exhausting her administrative remedies.  *See* Docket No. 35, p. 3, ll. 22-25.

However, a review of Lesser's (and her attorney's) correspondence with MetLife reveals that she did not comply with the terms of the Plan, which requires that she state the reasons she believed her claim was improperly denied and submit "in writing" any documents or other information that she believed supported her position.  (118)  Because Lesser failed to comply with the terms of Plan, regardless of

whether she *believed* she was appealing the claim decision, there has been no final adjudication of any appeal.  Defendants accordingly submit that this litigation is premature, and Lesser's claim should be remanded to MetLife for further consideration.

### A.   ERISA Requires That A Participant/Beneficiary Exhaust Administrative Remedies Before Bringing A Lawsuit

Lesser claims that the October 24, 2008 letter was her appeal letter.  This is incorrect, because that correspondence does not include the information needed to conduct a proper administrative review of the initial claim decision and is insufficient to put MetLife on notice to adjudicate an appeal of the claim decision.  The Plan requires that any appeal letter state why Lesser believes "the claim was improperly decided."  (118)  No such statement is included in the October 24, 2008 letter.  While MetLife believes Lesser will claim that the letter's reference to certain documents indicates that she intended to appeal the underlying claim decision, nowhere in the letter does Lesser state that she is appealing the claim decision.  The letter thus fails to meet the requirement that Lesser engage in a "meaningful dialogue" with MetLife regarding the specific reasons for her disagreement.  *See Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (explaining 29 C.F.R. § 2560.503-1(f) requires "meaningful dialogue between ERISA plan administrators and their beneficiaries."); *see also Glaus v. Kaiser Foundation Health Plan*, 2009 WL 2905961, *4 (N.D. Cal. September 8, 2009) (no appeal was initiated as "Glaus's letter does even indicate she wished to contest a determination previously made by Kaiser"); *Noble v. Union Bank of California Long Term Disability Benefits*, 2008 WL 3184760 (N.D. Cal. August 4, 2008) (plaintiff's "'ongoing conversations' with defendant regarding his benefits" insufficient to demonstrate that he exhausted his administrative remedies).

Next, MetLife received a letter from her then-counsel Jeffrey Jacobs.  (35) This letter, dated November 19, 2008, similarly failed:  (1) to indicate it was intended as an appeal; (2) to set forth the reasons Lesser disagreed with MetLife's decision; or (3) to include any additional documents and/or information to support her claim. Further, there was no follow-up communication from Lesser's attorney suggesting that his November 2008 letter was intended as an appeal and/or following up on a decision, as would be expected if the letter was actually intended as an appeal. Additionally, no indication is given that Lesser understood she had *already* appealed the claim decision with her October 2008 letter.  Indeed, the contrary is more accurate -- Jacobs says that Lesser is "currently discussing" this matter with MetLife and the DOI.  The letter thus confirms that, rather than following the claim review procedure set forth in the Plan, Lesser instead chose to lodge a complaint with the DOI.

Because Lesser failed to appeal the claim decision, this lawsuit is premature.  It has long been the rule under ERISA that federal courts "have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound public policy they should usually do so."  *Amato*, *supra* at 568; *see also Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995); *Jordt v. Clerks and Lumber Handlers Pension Fund*, 2006 WL 228953, *4 (N.D. Cal. January 30, 2006).  Failure to exhaust internal plan procedures and remedies prior to bringing suit will result in dismissal of litigation brought prematurely, and perhaps unnecessarily.  *Diaz*, *supra*, 50 F.3d at 1483.  Indeed, the *Amato* court held that "sound policy requires the application of the exhaustion doctrine in [ERISA] suits."  *Id.* at 566.

The Ninth Circuit also pointed out that it would be "anomalous if the same good reasons that presumably led Congress . . . to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that

those remedies are regularly used." *Id.* at 567.  Similarly, the *Diaz* court explained that:

> [T]he exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise. *Id*. at 1483.

### B.  Lesser Does Not Qualify For Any Of The Limited Exceptions To The Exhaustion-Of-Administrative-Remedies Requirement

Admittedly, the above authorities note that the failure to exhaust administrative remedies may be excused by a court if the record shows that doing so would have been a futile act.  However, that exception is a narrow one and does not apply here.

Specifically, a participant/beneficiary may be permitted to sue without first having exhausted plan remedies, only "to avoid the need to pursue an administrative appeal that is demonstrably doomed to fail." *Diaz*, *supra*, 50 F.3d at 1486.  Lesser cannot demonstrate that her appellate efforts were "doomed to fail."  She simply chose not to pursue them.  The claim file is lacking any suggestion or conclusion either that MetLife had "made up its mind" with regard to the merits of Lesser's claim or that it could not be convinced to change its initial claim determination after an administrative review.  One of the benefits of the ERISA appeal process is that the claim is reviewed anew by a decision-maker who was not involved in the initial determination.  Because Lesser did not appeal, that process did not occur, and nothing in the claim file suggests that such a process would have been futile.

In short, Lesser has no competent evidence to suggest that MetLife was, or is, unwilling to consider the merits of an administrative appeal.  Thus, Lesser cannot demonstrate that her administrative appeal was doomed to fail, and she must exhaust

the administrative remedies available to her before she can properly maintain the present lawsuit.

### 4. METLIFE'S CLAIM-DENIAL DECISION SHOULD BE REVIEWED UNDER THE HIGHLY DEFERENTIAL "ABUSE OF DISCRETION" STANDARD OF JUDICIAL REVIEW

In a section entitled "Discretionary Authority of Plan Administrator and Other Plan Fiduciaries," the Plan contains the following language vesting MetLife with discretionary authority to make claims decisions and to interpret the terms of the Plan:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious. (118)

The abuse of discretion standard applies where, as here, the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). This analysis was reaffirmed by the Ninth Circuit in *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955, 970 (9th Cir. 2006) and more recently in *Montour v. Hartford Life & Accident*, 582 F.3d 933 (9th Cir. 2009).

The breadth of the Plan language is comparable to plan provisions that have previously been held – by both the Ninth Circuit and the United States Supreme Court – to confer discretion and to mandate an "abuse of discretion" standard of review. *See Abatie*, *supra*; *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992), *cert. denied*, 507 U.S. 1031 (1993); *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990). Indeed, the Plan language here is more explicit

than, and confers as much discretion to MetLife as, the plan language at issue in *Abatie.* In the words of *Abatie*, the Plan documents at issue here "bestow[] on the administrator the responsibility to interpret the terms of the plan *and* determine eligibility for benefits." *Id* at 965.

Thus, the Plan documents unquestionably grant discretionary authority to MetLife to determine eligibility for, and entitlement to, Optional Life insurance benefits, as well as to interpret the terms of the Plan.

**5.    METLIFE'S CONCLUSION THAT LESSER IS NOT ENTITLED TO OPTIONAL LIFE INSURANCE BENEFITS UNDER THE PLAN IS REASONABLE**

Based upon all of the information in the claim file and the Plan documents, Defendants submit that MetLife's claim decision was reasonable. In a recent post-*Glenn* decision, the Ninth Circuit reaffirmed that an ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan or (3) relies on clearly erroneous findings of fact. *See Wells v. Reliance Std. Life Ins. Co.*, 2008 U.S. App. LEXIS 14430 (9th Cir. July 3, 2008). This case confirms that after the *Glenn* decision, the Ninth Circuit's abuse-of-discretion assessment has remained the same as it was dating back to *Snow v. Standard Insurance Co.*, 87 F.3d 327, 331 (9th Cir. 1996) ("[I]t is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based upon clearly erroneous findings of fact.").

In *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000), the Ninth Circuit clarified that "[a] plan administrator's decision to deny benefits ***must*** be upheld under the abuse of discretion standard if it is based upon a reasonable

interpretation of the plan's terms and if it was made in good faith." (Emphasis added.)  Under an abuse of discretion standard, the question to be asked is *not* whose interpretation of the plan documents is most persuasive, but whether the interpretation the administrator or claim fiduciary used is unreasonable.  *Id.* at 1113, *citing Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600, 606 (9th Cir. 1996); *see also Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1307 (9th Cir. 1986).

Therefore, an administrator's decision should be affirmed if it was based on substantial evidence and complied with the terms of the plan.  *See, e.g., Meditrust Fin. Servs. Corp. v. The Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999).  Substantial evidence does not mean that the administrator's decision must be proven correct by a preponderance of the evidence.  Rather, substantial evidence "is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

### A.    MetLife's Decision Did Not Conflict With The Plain Language Of The Plan

The third prong of the *Snow* test – requiring that an administrator/fiduciary's decision not "conflict with the plain language of the plan" – is the most relevant factor in this litigation.  *Snow, supra* at 331.  MetLife's claim decision did not contradict the Plan's "plain language" and in fact expressly relied on such language.

The Plan consistently and unambiguously states that Decedent "was required to give evidence of [his] Insurability satisfactory to [MetLife]" (91) and that changes will only take effect when MetLife "determine[s] that You are insurable."  (92)  The Plan further explains that "if you do not give [MetLife] evidence of

insurability…Your Optional Life Insurance will not be increased. (101)  The Plan language is clear, and MetLife's claim-denial decision was consistent with that unambiguous language.

Lesser's primary argument that Decedent was not required to present evidence of insurability is based on the April 7, 2008 "Health Welfare Annual Enrollment Worksheet" that Northrop mailed Decedent.  *See* Exhibit "1" to Plaintiff's Opposition to Defendants' motion for summary judgment.  (Docket No. 27-2)  While the 2007 worksheet explained that "Evidence of Insurability is required" in order to obtain *any* amount of Optional Life insurance coverage (51), the 2008 worksheet appears not to reflect this requirement for most Optional Life insurance choices, with the exception for coverage for seven and eight times Decedent's base pay.  However, the Plan never waived the evidence-of-insurability requirements between 2007 and 2008.  Such a major change would have been (but is not) reflected in the Plan documents.  Instead, when the 2008 worksheet was mailed, the processing error caused the system to reflect that Decedent already had enrolled in the Optional Life insurance program, which, if true, would have meant that no additional evidence of insurability was required for coverage less than $600,000.

## B.   MetLife's Denial Decision Was Supported By Substantial Evidence In The Claim File

MetLife's decision to deny Lesser's claim for additional life insurance benefits was supported by substantial evidence in the claim file that Decedent did not provide evidence of insurability when he attempted to dramatically increase his life insurance coverage.  Decedent never offered any medical records or a Statement of Health in support of his request to significantly increase his insurance coverage.  Given the indication on the death certificate (13) that Decedent suffered from numerous, chronic and debilitating medical conditions (including renal disease for 4 years and

diabetes for 10 years), it is highly unlikely that he would have qualified for such coverage so close to his actual death.

### C.    MetLife Fully Explained The Basis Of Its Decision

*Snow* also requires that an administrator/fiduciary explain its decision. *Snow, supra* at 331. As noted above, in the September 29, 2008 letter to Lesser, MetLife properly – and thoroughly – explained its claim decision. (32-33) This letter details the relevant Plan provisions, and explains that while Decedent had Basic Life insurance coverage, he failed to properly enroll in the Optional Life insurance program.

Accordingly, because MetLife's claim determination did not conflict with the plain language of the Plan, was supported by substantial evidence in the claim file and was fully explained to Lesser, Defendants submit that judgment should be issued in their favor.

### 6.    METLIFE WAS NOT ESTOPPED FROM ENFORCING THE UNAMBIGUOUS TERMS OF THE PLAN SIMPLY BECAUSE PREMIUMS WERE MISTAKENLY DEDUCTED FROM DECEDENT'S PAYCHECKS

Defendants anticipate that Lesser will assert that MetLife is estopped from denying her claim for Optional Life insurance benefits because premiums were deducted from Decedent's paycheck. However, the case law is clear that estoppel is not appropriate based on the facts of this case. In *Greany v. Western Farm Bureau Life Insurance Co.*, 973 F.2d 812, 821 (9th Cir. 1992), the Ninth Circuit held that a claim of equitable estoppel is only available in an ERISA action when the plan provisions are ambiguous *and* oral representations were made regarding the interpretation of the contract. *See also Jordt, supra* at *7 (a plaintiff must prove **both**

that "(1) the provisions of the plan at issue were ambiguous, such that reasonable persons could disagree as to their meaning or effect, and (b) that representations were made to him involving an oral interpretation of the plan" to have a viable equitable estoppel claim).

Lesser's First Amended Complaint does not allege that either she or Decedent relied on any person's oral representations when attempting to determine whether Decedent was properly enrolled in the Optional Life insurance program.  Regardless, because the Plan language is unambiguous, Defendants are not estopped from enforcing the Plan's terms.  In *Greany*, the Ninth Circuit explained that "[a] plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan *beyond what he could recover under the unambiguous language of the plan itself*."  *Id*. at 822 (emphasis added); *see also Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993) (citing *Greany* and explaining "an estoppel claim cannot result in a payment of benefits that would be inconsistent with the written plan.").

Permitting Lesser to collect an additional $512,000 in life insurance benefits (in exchange for $1,779.92 in premiums, especially when those premiums have been *refunded*) despite Decedent's failure to provide *any* evidence of insurability would be in clear violation of the unambiguous terms of the Plan.  *See Marx v. Loral Corp.*, 87 F.3d 1049, 1052 (9th Cir. 1996) (upholding judgment on the pleadings because "equitable estoppel principles apply under ERISA only when the provisions of the plan are ambiguous, which they were not in this case.").  Stated directly, Lesser should not be permitted an end-run around the Plan provisions requiring evidence of insurability in order to increase life insurance coverage after the employee's initial date of hire.

Accordingly, Defendants maintain that the Plan provisions must be enforced as written. Because MetLife correctly interpreted the terms of the Plan in denying Lesser's claim for additional life insurance benefits, Defendants respectfully request judgment in their favor.

### 7.   CONCLUSION

MetLife's determination that Lesser was not entitled to Optional Life insurance benefits under the Plan is amply supported by substantial evidence in the claim file and is based on a reasonable interpretation of the terms of the Plan. When properly reviewed under the "abuse of discretion" standard, Defendants respectfully submit that this Court should conclude that the decision to deny Lesser's claim was reasonable and that Lesser is not entitled to further benefits.

DATED:  September 21, 2010            BARGER & WOLEN LLP


By: */s/ Robert K. Renner*
    ROBERT K. RENNER
    SCOTT E. CALVERT
    Attorneys for Defendants
    Metropolitan Life Insurance Company and
    Northrop Grumman Health Plan

1

PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4

       I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  Barger & Wolen LLP, 19800 MacArthur Boulevard, 8th Floor, Irvine, California  92612.

5

6

7

       On **September 21, 2010**, I served the foregoing document(s) described as **DEFENDANTS' OPENING TRIAL BRIEF** on the interested parties in this action by causing it to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document on individual(s) listed below:

8

9

10

11

12

Charles J. Fleishman, Esq.              Attorneys for Plaintiff
The Fleishman Law Firm              Robin Lesser
19839 Nordhoff Street
Northridge, California  91324
Telephone:  (818) 350-6285
Facsimile:  (818) 350-6272
email: erisa@erisarights.com

13

14

15

**[X]**  **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  Executed at Irvine, California on **September 21, 2010.**

16

17

NAME: Derek A. Sutter             */s/ Derek A. Sutter*
                                   (Signature)

18

19

20

21

22

23

24

25

26

27

28