**THE FLEISHMAN LAW FIRM**
Charles J. Fleishman Bar# 46405
Paul A. Fleishoff Bar# 251657
19839 Nordhoff St., Northridge, California 91324
Telephone: (818) 350-6285
FAX: (818) 350-6272
erisa@erisarights.com
Attorneys for **Plaintiff**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LESSER | ) NO. CV 09-5699 RSWL(CWx) |
| Plaintiff, | ) PLAINTIFF'S REPLY TRIAL BRIEF |
| vs. | ) |
| METROPOLITAN LIFE INSURANCE COMPANY, a corporation; NORTHROP GRUMMAN HEALTH PLAN, an ERISA plan; DOES 1 through 10, inclusive, | ) Hearing Date: October 19, 2010<br>) Time: 9 am<br>) Courtroom: 21 |
| Defendants. | ) |

i

# Table Of Contents

I.  PLAINTIFF OBJECTS TO DEFENDANTS INTRODUCTION OF
NEW EVIDENCE ON THE EVE OF TRIAL…………………………………..1

   1. Defendants Lied About Important Documents Which Were In
MetLife's Possession From The Start...………………………………………..…1

   2. Defendant's Late Evidence Production Prejudices Plaintiff……………..2

   3.  Defendant Is Not Free To Pick And Choose What It Includes In The
Administrative Record……………………………………………………….....…3

II. DEFENDANTS NEW REASON FOR DENYING MRS. LESSER'S
CLAIM SHOULD NOT BE CONSIDERED BY THE COURT………………5

III. METLIFE'S WILLFULL IGNORANCE DOES NOT EXCUSE THE
PLAN FROM PAYING FOR BENEFITS THAT WERE PROMISED
AND PAID FOR…………………………………………………........................6

   1. MetLife's Arguments are Based On Its Willful Ignorance………........6

   2. Forget MetLife…………………………………………………………....7

IV.  MISTAKES WERE MADE… BUT NOT BY MR. OR MRS. LESSER….8

   1.  Mistakes Made By The Plan's Administrators…………………………8

2.  Mistakes Made By MetLife…………………………………………...8

3. Mistakes Made by Defendants In Their Trial Brief……………………9

V.  METLIFE'S ATTEMPT AT RETORACTIVELY DENYING MR. LESSER'S APPLICATION FOR LIFE INSURANCE IS NOT ENTITLED TO ANY DEFERANCE……………………………………………………..9

1.  The Issue Of Whether Or Not Mr. Lesser Was Covered By Option 9 Life Insurance When He Died Is The Only Issue In This Case, And It Is Not Subject To MetLife's Discretion……………………………………………..9

2.  MetLife Never Decided Mrs. Lesser's Appeal And So There Is No Exercise Of Discretion On MetLife's Part To Which To Defer………………..10

3.  MetLife Is A Conflicted Administrator, And Its Decision To Deny Mrs. Lesser Option 9 Benefits Was Based Entirely On Its Own Pecuniary Interest………………………………………………………………………….13

VI.  MR. LESSER'S EXPECTATION OF COVERAGE WAS REASONABLE………………………………………………………..15

VII. CONCLUSION…………………………………………………..16

iii

# **Table Of Authorities**

Cases Cited

1. *Abatie v. Alta Health,* 458 F3d 955 (9th Cir. 2006)…..………………………13

2. *Bard v. Boston Shipp Ass'n.* 471 F.3d 229 (1st Cir. 2006)…………..……....4

3. *Booton v. Lockhead Medical Benefit Plan,* 110 F.3d 1461 (9th Cir. 1997)…………………………………………………………………...…….....11

4. *Dietlin v. General American Life Ins. Co.,* 4 Cal.2d 336 (1935)…...….……7

5. *Duvall v. Reliance Standard Life Ins. Co.,* 646 F.Supp.2d 1188 (E.D.Cal. 2009)……………….…………...…………………………………...………4

6. *Egan v Mutual of Omaha Ins. Co.,* 24 Cal. 3d 809 (1979)…………………14

7. *Everhart v. Allmerica,* 275 F.3d 751 (9th Cir. 2001)……...…..……………7

8. *Gaines v. Sargent Fletcher,* 329 F.Supp.2d 1198 (C.D.Cal, 2004) ……...6-7, 16

9. *Gaither v. Aetna,* 394 F.3d 792, (10th Cir. 2004)…………….……………7, 14

10. *Jebian v. Hewlett-Packard,* 349 F3d 1098 (9th Cir. 2003)…..……………12-13

11. *MetLife v. Glenn,* 128 S.Ct. 2343 (2008)…………………………………..13

12. *Mitchell v. CB Richard Ellis*, 611 F.3d 1192 (9th Cir. 2010)…...……….5

13. *Montour v. Hartford*, 588 F.3d 623 (9th Cir. 2009)………….....……….4

14. *Saffon v. Wells Fargo,* 511 F.3d 1206 (9th Cir. 2008)………………...…5, 11

15. *Saltarelli v. Bob Baker Group,* 35 F.3d 382 (9th Cir.1994)………………15

16. *United States v. Blau,* 961 F.Supp. 626 (S.D.N.Y. 1997)……………...…15

17. *Williams v. American Casualty Co.*, 6 Cal. 3d 266 (1971)…………..…….7

Statutes Cited

1. 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8) and (b)(5)………………………..4

# I. PLAINTIFF OBJECTS TO DEFENDANTS INTRODUCTION OF NEW EVIDENCE ON THE EVE OF TRIAL.

## 1. Defendants Lied About Important Documents Which Were In MetLife's Possession From The Start.

Defendants previously claimed that MetLife did not receive or know about certain documents prior to the start of litigation. In fact, MetLife has been in possession of the documents from the start.

For example, even after Plaintiff sent Defendants the October 24, 2008 letter (A 449)[1] in her supplemental disclosures on March 2, 2010 (Exhibit 4), MetLife would not admit that it belonged in the administrative record. Three months later, on June 16, 2010, only hours before Defendants filed their motion for summary judgment, defense counsel, Scott Calvert, wrote,

> "It appears that MetLife will be agreeable to supplementing the Administrative Record with some of the documents included in Plaintiff's Supplemental Disclosures, including specifically the November 2008 letter from MetLife to Lesser[2]. However, it is still trying to assess whether the other documents were in front of MetLife at any point during the claim process." Emphasis added, Exhibit 6 page 2.

---

[1] In order to simplify matters Plaintiff will refer to documents from Defendants' Exhibit A as "A" followed by the page number and documents from Defendants' Exhibit B by "B" followed by the page number. Because Defendant filed its new administrative record so late the citations to "Defendants' Exhibit B" in Plaintiff's opening brief are to the November 20, 2008 letter from MetLife to Mrs. Lesser, which was previously the only document in Defendants' exhibit B, now located at B 55.

[2] Defendants never added the November letter from MetLife to Mrs. Lesser to the administrative record instead they added it as Exhibit B. It is this letter that Plaintiff refers to when she refers to Exhibit B in her opening trial brief because at the time her opening brief was due Defendants had not provided the rest of their Exhibit B. Defendants only provided Plaintiff with their new and improved, although still incomplete, administrative record 2 days after opening trial briefs were due.

In their reply in support of their motion for summary judgment Defendants argued that Mrs. Lesser failed to prove that her October 24, 2008 letter to MetLife was actually sent to MetLife. Docket #28 3/24-25. This argument was clearly made in bad faith since Defendants now admit, more than 6 months after Plaintiff's supplemental disclosures, that MetLife was in possession of the October 24, 2008 letter the whole time. Exhibit 9.

Similarly, regarding the 2008 worksheet that confirmed Mr. Lesser's coverage under Option 9 for $600,000, (Exhibit 1) Defendants claimed that, "Defendants did not receive a copy of [the 2008 Worksheet] until it was produced by Lesser with her Supplemental Initial Disclosures." Docket #39 21/11-13. In fact MetLife was in possession of the document the entire time. A 449, B 42, 43. Defendants have not only breached their fiduciary duty to the Lessers, they have committed perjury to the court.

## 2. Defendant's Late Evidence Production Prejudices Plaintiff.

Throughout these proceedings there are certain documents Plaintiff has contended should be part of the administrative record (Exhibits 1, 2, 3, 5, and 8). Some of these documents confirm that Mr. Lesser was covered under Option 9 for $600,000 at the time of his death. Exhibits 1 and 5. Other documents evidence Mrs. Lesser's attempts to pursue and appeal her claim. Exhibits 3 and 8. Defendants never admitted the existence of these documents thus impliedly denying the documents where in front of MetLife at any point during the claims process. It turns out that MetLife had the documents the whole time. Exhibit 9, A 499, B 32, 37, 41-43.

MetLife only revealed that it was in possession of these documents on the eve of trial. MetLife filed these documents under seal on September 22, 2010, the day after both parties were scheduled to file their opening trial briefs. Plaintiff

only received Defendants newly prepared record on September 23, 2010, two days after Plaintiff timely filed her opening brief.

Not only does Defendants' newly prepared record contain all the documents that Plaintiff contended should be in the record, it also contains documents that Plaintiff has never before seen.  Plaintiff has been prejudiced by Defendants failure to disclose these documents during the claim process or at least at the start of this litigation.

For instance, one of the documents states that on November 21, 2008, Kimberly Haluska at MetLife Corporate Customer Relations changed the claims coding from "Claims/Unsatisfactory Settlement" to "Claims/Denial of Benefit." Plaintiff would have liked the opportunity to ask MetLife exactly what "Claims/Unsatisfactory Settlement" means.   There are also new email chains, correspondence with the Department of Insurance, and evidence of ongoing correspondence with the Plaintiff.  These documents not only raise questions that could have been put to the Defendant in discovery, but also support Mrs. Lesser's assertion that she attempted to engage MetLife in a meaningful dialogue regarding her claim and that further appealing her claim would have been futile.

### 3.  Defendant Is Not Free To Pick And Choose What It Includes In The Administrative Record.

Although MetLife was in possession of all the documents contained in Defendants' Exhibits A and B, Defendants contend that only Exhibit A should be considered by the court because Exhibit B is a "separate regulatory file maintained by MetLife"[3].  Exhibit 9.  Defendant's contention is contrary to ERISA and contrary to the facts.

---

[3] Defendants do not explain why they previously denied their possession of the documents in Exhibit B.

3

The "administrative record"[4] in an ERISA case includes **all** material an insurer considered; **all** material that it had in its possession but did not consider; **all** its claims policies, procedures, and guidelines; **all** evidence of the safeguards it uses to ensure fair accurate and consistent claims handling; and **everything** else "relevant" to the claim determination. 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8) and (b)(5); *Montour v. Hartford*, 588 F.3d 623, 632 n.4 (9th Cir. 2009) **All** these items are components of the ERISA administrative record that MetLife, as the claims administrator/insurer, had a fiduciary obligation to assemble and provide to Mrs. Lesser and the Court. "To the extent any relevant documents are missing, it was the Plan's responsibility, as keeper of the records, to provide those documents." *Bard v. Boston Shipp Ass'n.* 471 F.3d 229, 231 n2, (1st Cir. 2006). MetLife cannot keep two files and claim that one of them is not relevant.

Besides being contrary to ERISA, MetLife's claim of maintaining a regulatory file (Exhibit B) separate from the Administrative record is belied by the records contained in Exhibit A. If MetLife had maintained Exhibit B as a separate regulatory file regarding Mrs. Lesser's complaint to the Department of Insurance (DOI) why would it have placed correspondence from the DOI to MetLife about Lesser's claim in Exhibit A? A 44, 56, 164. Why withhold documents sent from Mrs. Lesser to MetLife from Exhibit A until the eve of trial? A 449. Why doesn't

---

[4] The phrase "administrative record," insofar as it connotes a body of evidence assembled by an impartial administrative agency, is fallacious in the context of an ERISA case involving a private insurance company which is itself a party to the underlying dispute. In rejecting the use of the phrase, the court in *Duvall v. Reliance Standard Life Ins. Co.*, 646 F.Supp.2d 1188, 1190 n.1 (E.D.Cal. 2009) explained "[t]he court uses the phrase Insurance Companies' Record, rather than Administrative Record, although Administrative Record has become customary in the field, because it suggests an independent record, which is false characterization of both the documents and their review." It is an especially false characterization when the insurance company has taken such liberties in sanitizing and doctoring the record as MetLife has in this case.

either record, A or B, contain an activity or phone log?  Where is the online application Mr. Lesser was provided?  Where is the original impact list he was listed on?  Even after MetLife admitted to having been in possession of documents that it previously claimed it had never received, MetLife is still trying to hide the ball.

## II. DEFENDANTS NEW REASON FOR DENYING MRS. LESSER'S CLAIM SHOULD NOT BE CONSIDERED BY THE COURT.

Defendant has asserted new reasons in this litigation for denying Mrs. Lesser's life insurance benefits other than those it provided her in the letter denying her claim.  The sole reason MetLife asserted for denying Mrs. Lesser's claim prior to this litigation was that Mr. Lesser had failed to provide evidence of insurability.  A 32.  Now Defendants are asserting a new reason to justify its denial of Mrs. Lesser's claim, namely that MetLife did not administer the plan and is therefore ignorant as to the Plan's administration process (discussed in further detail below).

The court should not consider Defendants' new reason for denying Mrs. Lesser's claim.  "When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures." *Saffon v. Wells Fargo,* 511 F.3d 1206, 1215 (9th Cir. 2008).

In *Mitchell v. CB Richard Ellis,* 611 F.3d 1192, 1198 (9th Cir. 2010) the ninth circuit agreed with the district court, "that MetLife could 'not disavow that it was the administrator and insurer for Mitchell's claim when it never raised that reason during administrative review.'"  Similarly in this case MetLife should not be allowed to disavow that it was the administrator and insurer for Mrs. Lesser's

claim, especially since it had previously told Mrs. Lesser that her claim fell under its jurisdiction.  B 55.

## III. METLIFE'S WILLFULL IGNORANCE DOES NOT EXCUSE THE PLAN FROM PAYING FOR BENEFITS THAT WERE PROMISED AND PAID FOR.

### 1. MetLife's Arguments are Based On Its Willful Ignorance.

According to Defendants an applicant's optional life insurance does not take effect until MetLife, and only MetLife, approves his request and informs him in writing that it has taken effect.  Docket #44 5/22-24, 6/26-27.  Defendants also claim, "Only when an employee dies is MetLife notified of the potential coverage at issue."  Docket #44 7/28.  How can MetLife inform an applicant whether or not his request for life insurance has been approved when MetLife only learns of the applicant after his death?

According to Defendants, MetLife has established an administrative system for the Plan that is designed to keep MetLife ignorant regarding all aspects of the application process, and even the identities of those insured until they are dead.  In this case Defendants have argued that MetLife's ignorance excuses the Plan from paying Mrs. Lesser's benefits.  Defendants are wrong.

In *Gaines v. Sargent Fletcher*, 329 F.Supp.2d 1198 (C.D.Cal, 2004) Hartford argued that because it did not know that Plaintiff had purchased optional life insurance it could not be held responsible for deducting premiums for that insurance.  The Court found this argument unpersuasive.

> "[R]ather than exonerating Hartford and justifying its refusal to pay on Gaines's claim, the evidence that Hartford's system is designed to assure receipt of payment without a corresponding mechanism to insure that the beneficiary has properly qualified for the purchased benefit further supports the Court's conclusion that Hartford labored under a conflict of interest. In short, Hartford makes sure it gets paid, but makes no effort to assure that the beneficiary is getting what he or she paid for. This is a choice made by Hartford, but it hardly serves as support for its claim that it could not, in the

exercise of reasonable diligence, have known that Gaines purchased coverage for his wife, in the amount of $150,000." Id. at 1214

An insurance company "is chargeable with knowledge of all policies issued by it to the insured." *Dietlin v. General American Life Ins. Co.*, 4 Cal.2d 336, 351 (1935).

"Fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Gaither v. Aetna*, 394 F.3d 792, 807 (10th Cir. 2004)

### 2. Forget MetLife.

MetLife is not a necessary party to this action. "A money judgment for an action brought under § 1132(a)(1)(B) may be enforced only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity." *Everhart v. Allmerica,* 275 F.3d 751, 753 (9th Cir. 2001). The only necessary Defendant in this action is the Defendant Plan.

The Plan cannot claim ignorance regarding the confirmations of coverage that were sent to Mr. and Mrs. Lesser. Those confirmations were sent on the Plan's behalf by the Plan's administrator. Similarly, the Plan cannot claim that it had no knowledge of the premiums being deducted from Mr. Lesser's pay checks[5]

---

[5] Defendants have asserted for the first time in this litigation that MetLife did not receive premiums for Mr. Lesser's coverage under option 9. To prove this assertion Defendants cite to *Williams v. American Casualty Co.*, 6 Cal. 3d 266 (1971). Notably, the case involves neither MetLife nor Northrop Grumman and is therefore proof of nothing. Regardless, it must describe a premium collection process similar to MetLife's or why would Defendants have cited to it. According to the *Williams* court, "After deducting the premium payments from its employees' wages, [the employer] completed a monthly report indicating the employees from whom premiums had been collected and sent this report, accompanied by a check for the total premiums collected, to the insurer." But MetLife asserts that it did not

because they were being deducted by the Plan's administrator to pay for benefits provided by the Plan.  MetLife's self imposed ignorance is irrelevant to this case except as evidence of its biased claims procedures.

## IV.  MISTAKES WERE MADE… BUT NOT BY MR. OR MRS. LESSER.

### 1.  Mistakes Made By The Plan's Administrators.

Hewitt, the third party plan administrator, mistakenly offered Mr. lesser Option 9 life insurance providing $600,000 of coverage without requiring any evidence of insurability.  A 127, B 55.  Northrop Grumman, the employer/named plan administrator, mistakenly sent Mr. and Mrs. Lesser confirmation of Mr. Lesser's coverage under Option 9 life insurance, and deducted premiums for Option 9 life insurance.  Docket # 44 7/22-23 n8.  These alleged accidents were made by parties who were exercising their apparent authority under the Plan, not by Mr. or Mrs. Lesser.  If MetLife or the Plan have a dispute regarding the mistakes, it is with the Plan administrators, not the Plaintiff.

### 2.  Mistakes Made By MetLife.

But MetLife is not free from blame.  Defendants have admitted that MetLife made a few mistakes of its own.  For instance MetLife "mistakenly" paid Mrs. Lesser $88,000 in Option 9 life insurance.  Docket #44 2/27 n3.  MetLife "inadvertently" failed to provide Plaintiff or the Court with Mrs. Lesser's appeal letter.  Exhibit 9, A 449.  Also, MetLife failed to decide Mrs. Lesser's appeal (discussed further below).

Besides the mistakes that it admits to, MetLife also failed to provide the Court with other documents that should have been in the administrative record; MetLife lied about what it had in front of it while administering Mrs. Lesser's claim; MetLife

---

receive a list of individual participants or their level of coverage. Did MetLife accept the premiums without asking who they were being paid by?  Is this how an insurer should execute its fiduciary duty?

utterly failed to exercise reasonable diligence in discovering who was covered under its life insurance policies; and MetLife has allowed its own pecuniary interests to trump the interests of those to whom  it owes a fiduciary duty (discussed further below).

### 3. Mistakes Made by Defendants In Their Trial Brief.

Defendants allege that Mr. Lesser's premiums have been refunded but offer no credible evidence to support that allegation.  The premiums have not been refunded and if Defendants want to prove that they have been, all that Defendants need to do is produce the cancelled refund check or a receipt for the refund amount.

Defendants contend that the 2007 Worksheet explained that Mr. Lesser would need to present evidence of insurability if he wanted to increase his coverage by any amount.  Docket #44 6/15-18.  Actually, the 2007 Worksheet says nothing of the kind.  A 47-53.  In fact, the 2007 Worksheet does not say anything about Option 9. Like the Plan documents, the 2007 Worksheet only lists Options 1 through 8, each of which provides benefits which are a multiple of the insured's income.  A 51.  Besides there being no mention of Option 9, Option 9 does not belong in this scheme.  Rather than providing a multiple of the insured's income, Option 9 simply provides $600,000 in benefits.

## V.  METLIFE'S ATTEMPT AT RETORACTIVELY DENYING MR. LESSER'S APPLICATION FOR LIFE INSURANCE IS NOT ENTITLED TO ANY DEFERANCE.

### 1. The Issue Of Whether Or Not Mr. Lesser Was Covered By Option 9 Life Insurance When He Died Is The Only Issue In This Case, And It Is Not Subject To MetLife's Discretion.

MetLife contends that its claim denial "should be reviewed under the highly deferential abuse of discretion standard of judicial review."  MetLife's contention is

not only wrong, it is also irrelevant.  It is irrelevant because the only issue in this case is whether Mr. Lesser was covered under the Option 9 insurance policy when he died, and anybody who can read can see that he was.

The record shows that Mr. Lesser applied through his employer for the Option 9 election for $600,000 which was available to employees without evidence of insurability (A 127, B 55), that he received confirmation of his coverage under Option 9 (Exhibit 1, B 41, 42), and that for ten months, up until he died, he paid premiums for Option 9 (A 27-29, 128).  There is no amount deference that would allow MetLife to change these facts.

## 2. MetLife Never Decided Mrs. Lesser's Appeal And So There Is No Exercise Of Discretion On MetLife's Part To Which To Defer.

MetLife is not entitled to any deference because, according to its own admission, it received Mrs. Lesser's appeal but never decided it.  Mrs. Lesser appealed MetLife's decision denying her claim for Option 9 benefits in a letter dated October 24, 2008.  A 449.

Throughout the course of this litigation it has been Defendants' position that MetLife had never received the October letter from Mrs. Lesser.  Only on September 22, 2010, one day after Defendants' opening trial brief was due, did Defendants admit to Plaintiff that the letter had been in MetLife's possession the entire time.  See Exhibit 9.  And yet the Defendants still claim that the October letter does not count as Mrs. Lesser's appeal.

On September 29, 2008 MetLife wrote to Mrs. Lesser denying her claim for Option 9 life insurance benefits.  A 32-33.  The denial letter informed Mrs. Lesser of her right to appeal and provided the address where Mrs. Lesser was to send her appeal. On October 24, 2008 Mrs. Lesser sent a letter to the address MetLife had provided her and included several documents sent to her and her husband on behalf

of the Plan.  These documents confirmed Mr. Lesser was covered under the Option 9 life insurance policy.  A 449.  In that letter Mrs. Lesser stated,

> "These confirmations were current and sent to my home on or about 45 days prior to Barry S. Lesser's death.  Thank you for allowing me the opportunity to present these documents for review.  If I can be of any further assistance please do not hesitate to contact me.  Thank you for your prompt attention in resolving this matter."  A 449.

Mrs. Lesser provided new documentation for review, remarked that the new documentation confirmed Mr. Lesser's coverage under the Option 9 life insurance policy just before he died, and asked that she be contacted if she could be of further assistance.  Why did MetLife think she had written this letter?  For her health?  Did MetLife think that Mrs. Lesser was writing to them socially?  What other possible reason could Mrs. Lesser have had to write to MetLife regarding the claim MetLife had only recently denied, submit new documentation to MetLife supporting that claim, and ask for a speedy resolution to that claim other than to seek a review of MetLife's claim determination?[6]

In its order denying Defendants' Motion for Summary Judgment this court found that,

> "Although the October Letter did not directly state that Plaintiff was appealing MetLife's denial of benefit, the appeal requirements set out in the denial do not require this language.  In the October Letter, Plaintiff

---

[6] Defendants argument that the letter does not meet the requirement to engage in a meaningful dialogue as laid out by *Booton v. Lockhead Medical Benefit Plan,* 110 F.3d 1461, 1463 (9th Cir. 1997) is based on a misreading of *Booton*.  *Booton* clearly limits the discretion of ERISA plan administrators by requiring that they engage in a meaningful dialogue with claimants.  This makes sense since the plan administrators bear the burden of a fiduciary and not the claimants.  MetLife should be aware of this distinction since it was previously admonished by the 9th circuit in *Saffon v. Wells Fargo,* 511 F.3d 1206,1213-1214 (9th Cir. 2008), for failing to engage in a meaningful dialogue as required by *Booton*.  In this case also, MetLife did not meet its burden of engaging in a meaningful dialogue.  Mrs. Lesser's October letter ends asking that MetLife contact her if she could be of any further assistance.  If MetLife was unsure as to the purpose of Mrs. Lesser's letter why didn't it ask her?

submitted documents and requested that they be reviewed by MetLife, both requirements of the ERISA appeal procedure. A reasonable fact finder could conclude that Plaintiff's October Letter was sufficient to Appeal Defendants' denial of benefits."

Despite MetLife's earlier attempts to hide the fact, we now know for certain that MetLife received Mrs. Lesser's appeal in October 2008.

Also, while Defendant claimed in its Motion for Summary Judgment that, "Lesser's failure to make any effort to participate in the appeal process is wholly inconsistent with her obligation to exhaust her administrative remedies under ERISA" (docket #23 2/9-10) we now know that Mrs. Lesser did make efforts to participate in the appeal process. Mrs. Lesser spoke with Ms. Casey personally. Mrs. Lesser told Ms. Casey that she had additional documentation to support her claim for optional benefits that she would send her. B 19, 36.

Defendants now argue that Mrs. Lesser's participation in the appeal process further demonstrates she did not appeal. 15/10-11. Somehow, according to Defendants, because the Jacobs letter from November 19, 2008 states that "Robin Lesser is currently discussing this issue with Patty Casey at Metropolitan Life Insurance Company," (A 35) this confirms that Mrs. Lesser did not appeal her claim. It seems either Mrs. Lesser failed to participate enough, or participated too much in the appeal process. Either way Defendants were not going to pay her the Option 9 benefits.

While Mrs. Lesser timely appealed MetLife's denial of her benefits, MetLife never decided that appeal. Defendants have been very clear on that point. According to Defendants, "there has been no final adjudication of any appeal," (docket #44 14/1-2) and "No final claim determination exists for this Court to review." Docket #44 3/26. Therefore the November 20, 2008 letter from MetLife to Mrs. Lesser purporting to uphold MetLife's denial of Mrs. Lesser's claim is not really a denial of Mrs. Lesser's appeal.

In *Jebian v. Hewlett-Packard,* 349 F3d 1098 (9th Cir. 2003) the 9th Circuit held that under situations such as this one, where appeals are to be deemed denied

due to the administrators' failure to make a timely decision, such "Deemed denials are not exercises of discretion. They are therefore undeserving of deference under Firestone, and a de novo standard of review applies." Id. at 1106. Since MetLife failed to exercise its discretion it is not entitled to deference.

**3. MetLife Is A Conflicted Administrator, And Its Decision To Deny Mrs. Lesser Option 9 Benefits Was Based Entirely On Its Own Pecuniary Interest.**

MetLife both administers the claims for the Plan and pays the Benefits for the Plan. As such its duty as a Plan fiduciary and its goal to turn a profit are in conflict with each other. Even if there was no smoking gun evidence of how MetLife's conflict affected its claim decision in this case, the mere existence of MetLife's conflict means that MetLife's decision deserves something less than the highly deferential abuse of discretion standard of review MetLife seeks. *MetLife v. Glenn,* 128 S.Ct. 2343, 2350 (2008), *Abatie v. Alta Health,* 458 F3d 955, 967 (9th Cir. 2006)

In this case there is a lot of evidence showing that MetLife's claim decision was severely affected by its conflict of interest. The record demonstrates that MetLife always had its own fiscal welfare in mind when it evaluated Mrs. Lesser's claim. On August 2, 2008, Timothy D. Copperwheat, MetLife's Senior Examiner, advised that "GI[7] is lesser of 5x or 600k even if not approved for S[tatement] O[f] H[ealth]. 5x would equal 438,000. That much at least is payable." A 6. Despite Mr. Copperwheat's decision that at least $438,000 was "payable" even without an approved statement of health, MetLife decided not to pay it.

Also, MetLife has consciously abdicated its fiduciary responsibility to the employees of Northrop Grumman. According to MetLife it plays no part in providing or approving insurance applications for, collecting premiums for, or

---

[7] Group Insurance?

13

providing confirmation to employees of their coverage under, the life insurance policies it provides. Defendants have claimed that Northrop Grumman employees cannot get life insurance under the defendant Plan without first getting written approval from MetLife, yet MetLife never knows about an employee's potential coverage until the employee is dead. MetLife is thus free to collect the group premiums from Northrop Grumman employees and later claim the employees were never really covered under its plan.

MetLife has also failed to conduct a proper investigation into the facts underlying Mrs. Lesser's claim. "Fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Gaither v. Aetna*, 394 F.3d 792, 807 (10th Cir. 2004). See also *Egan v Mutual of Omaha Ins. Co.,* 24 Cal. 3d 809, 819, (1979).

The record is devoid of practically any investigation by MetLife. The only evidence of an investigation are a few emails between Hewitt and MetLife, most of which contain no substantive information. The most informative email is the one sent on September 2, 2008, which indicates that a $600,000 election was made available to Northrop Grumman employees without the requirement of evidence of insurability. A 127. But that e-mail raises more questions than it answers. How was the election made available to potential customers? Where is the application? The email also mentions an "original impact list" which listed Mr. Lesser. Who generated it? Where is it? There is no evidence that MetLife asked any of those questions, and MetLife has never provided either the online application or the original impact list to Plaintiff or the court. MetLife must have felt that it could more easily deny Mrs. Lesser's claim by maintaining its carefully cultured ignorance.

14

MetLife devised a system where it can claim ignorance of actions taken on behalf of the Plan it insures, even including its own actions. MetLife has finally provided documents that Plaintiff asserted were in its possession since the beginning of this litigation. It has tried to excuse its omission of them by claiming they were in a "separate regulatory file maintained by MetLife." Ex 9.

Even if we believe MetLife's claim of a separate regulatory file, this claim is further evidence that MetLife let its conflict interfere with its claims decision process. MetLife received documents from Mrs. Lesser (A 449) and rather than put those documents in her claim file it buried them in a separate regulatory file (B 32, 37, 41-43) which it then failed to provide to the court. MetLife even went so far as to lie to the court and claim "Defendants did not receive a copy of [the 2008 Worksheet] until it was produced <u>by Lesser</u> with her Supplemental Initial Disclosures." Docket #39 21/11-13. MetLife only revealed that it had received these documents prior to this litigation after Plaintiff provided the court with proof that, not only had the Plaintiff sent these documents to MetLife, the DOI had also sent these documents to MetLife in 2008. Ex 7. Even after lying to this Court MetLife expects deference. **Chutzpah**. See *United States v. Blau,* 961 F.Supp. 626, 633 n.7 (S.D.N.Y. 1997)

## VI.  MR. LESSER'S EXPECTATION OF COVERAGE WAS REASONABLE.

California and ERISA law establishes that in a contract for life insurance, the contract should be read to comport with the reasonable expectations of the beneficiary. This rule of reasonable expectations has been formulated as follows:

> "In general, courts will protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *Saltarelli v. Bob Baker Group,* 35 F.3d 382, 386 (9th Cir.1994).

Mr. and Mrs. Lesser were sent several documents providing confirmation that Mr. Lesser was covered under Option 9 and that Mrs. Lesser was entitled to 100% of the benefits provided by Option 9.  Mr. Lesser paid premiums for Option 9 life insurance for 10 months, until he died.  Nobody notified the Lesser's that there was anything wrong with Mr. Lesser's application for Option 9 life insurance until after Mr. Lesser died.  Only when the time came for Defendants to pay Mrs. Lesser the benefits did Defendants decide that Mr. Lesser had never been covered.

Applicants for life insurance policies reasonably expect that the applications they complete clearly reflect the requirements for that coverage.  Furthermore an insured and his intended beneficiary would expect that when the insured submits his life insurance application and pays life insurance premiums for almost a year he is insured.  *Gaines v. Sargent Fletcher*, 329 F.Supp.2d 1198, 1218-1219 (C.D.Cal, 2004)

## VII. CONCLUSION.

Defendants' arguments are without merit and often predicated on lies.  The court should rule in favor of Plaintiff.

Respectfully submitted,

 /s/Paul Fleishman

PAUL FLEISHMAN

DATED:  October 5, 2010

16