Robert K. Renner (155283), rrenner@bargerwolen.com
Scott E. Calvert (210787), scalvert@bargerwolen.com
BARGER & WOLEN LLP
19800 MacArthur Boulevard, 8th Floor
Irvine, California  92612
(949) 757-2800 / Fax:  (949) 752-6313

Attorneys for Defendants
Metropolitan Life Insurance Company and
Northrop Grumman Health Plan

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LESSER,<br><br>              Plaintiff,<br><br>     vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a corporation;<br>NORTHROP GRUMMAN HEALTH PLAN, an ERISA plan; DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO.: CV 09-5699 RSWL(CWx)<br><br>**DEFENDANTS' RESPONDING TRIAL BRIEF**<br><br>Trial<br>DATE:  October 19, 2010<br>TIME:   9:00 a.m.<br>CTRM:  21<br><br>[Filed Concurrently With:<br> -  Declaration of Virginia Fawkes]<br><br>FAC Filed:  March 11, 2010 |

i:\office7\7197\267\10pleadings\13 responding brief - final.doc

# TABLE OF CONTENTS

**PAGE**

1.    INTRODUCTION ............................................................................ 1

2.    DEFENDANTS DID NOT "SANITIZE" THE CLAIM FILE; THE DOCUMENTS LESSER SUBMITTED IN RELATION TO HER COMPLAINT TO THE DOI WERE MAINTAINED BY METLIFE IN A SEPARATE REGULATORY FILE ........................................... 4

    A.    Defendants Did Not Remove Documents From The Claim File ................ 4

    B.    The Documents Submitted By Lesser In Support Of Her DOI Complaint Do Not Establish That She Exhausted Her Administrative Remedies; To The Contrary, They Confirm Both That She Never Pursued An Appeal And That This Lawsuit Is Premature ......................... 8

3.    DEFENDANTS DID NOT WAIVE THE PLAN'S EVIDENCE-OF-INSURABILITY REQUIREMENT ...................................................... 9

    A.    Neither Defendant Voluntarily (Or Intentionally) Relinquished The Right To Require Evidence Of Insurability ............................... 10

    B.    *Gaines*, The Primary Case Upon Which Lesser Bases Her Entitlement To Optional Life Insurance Benefits, Is Readily Distinguishable, Both Factually and Legally ............................... 13

    C.    The Waiver Cases Offered By Lesser Do Not Support Her Claim That Defendants Waived The Evidence Of Insurability Requirement ...... 18

4.    CONCLUSION ............................................................................ 20

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

1

## **TABLE OF AUTHORITIES**

2

**PAGE**

3

### **Cases**

4

*Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) ...... 10, 18

5

*Barnes v. Lacy*, 927 F.2d 539 (11th Cir. 1991) ....................................................... 14

6

*Berger v. Life Insurance Co. of North America*, 103 F. Supp. 1344 (N.D. Ga. 2000) ........................................................................................................................ 19

7

*Burdick v. Union Sec. Ins. Co.*, 2009 WL 6541608 (C.D. Cal. 2009) ................... 12

8

*Castello v. Gamache*, 593 F.2d 358 (8th Cir. 1979) ................................................ 14

9

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*, 30 Cal. App. 4th 54 (1994) .................................................................................................. 12

10

*Furleigh v. Allied Group Inc.*, 281 F. Supp. 2d 972 (N.D. Iowa 2003) ................. 19

11

*Gaines v. Sargent Fletcher Inc. Group Life Insurance Plan*, 329 F. Supp. 2d 1198 (C.D. Cal. 2004) ........................................................................................ passim

12

13

*Lauder v. First Unum Life Insurance Co.*, 284 F.3d 375 (2d Cir. 2002) .......... 19, 20

14

*McDaniel v. Chevron Corp.*, 203 F.3d 1099 (9th Cir. 2000) .................................. 18

15

*MetLife v. Glenn*, 128 S. Ct. 2343 (2008) ............................................................... 18

16

*Minton v. Stuyvesant Life Ins. Co.*, 373 F. Supp. 33 (D.C. Nev. 1974) ................. 16

17

*Pitts v. American Security Life Insurance Co.*, 931 F.2d 351 (5th Cir. 1991) ........ 19

18

*Rhorer v. Raytheon Engineers and Constructors, Inc.*, 171 F.3d 634 (5th Cir. 1999) ...................................................................................................................... 19

19

20

*Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir. 1994) .......... 16

21

*Schultz v. MetLife*, 872 F.2d 676 (5th Cir. 1989) ................................................... 14

22

*Thomas v. Silgan Container Corp.*, 2001 WL 590013 (N.D. Cal. 2001) ................. 6

23

*U.S. v. King Features Entertainment, Inc.*, 843 F.2d 394 (9th Cir. 1988) ............. 11

24

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1 (1995) ..................................... 11

25

*Williams v. American Casualty Co.*, 6 Cal. 3d 266 (1971) ..................................... 17

26

27

28

### 1.    **INTRODUCTION**

The unambiguous terms of the Northrop Grumman Health Plan ("Plan") required that Barry Lesser ("Decedent") submit evidence of insurability before he could receive approval to increase his life insurance coverage after more than 27 years of employment with Northrop Grumman Corporation ("Northrop").  Plaintiff Robin Lesser ("Lesser") cannot point to any evidence that Decedent complied with the Plan's terms.  Nor can she explain why Decedent, who had diabetes and renal disease at the time he sought to significantly increase his coverage, should be put in a better position by ignoring the Plan terms and failing to provide evidence of insurability than a similarly situated participant who complied with the Plan terms and had his evidence of insurability reviewed and rejected.  Rather, with her Opening Trial Brief she attempts to draw the Court's attention away from this simple and determinative fact by accusing the Plan and Metropolitan Life Insurance Company ("MetLife") (collectively, "Defendants") of "sanitizing" the claim file.  As set forth below, the accusation is unfounded, untrue and does not make any sense.

Lesser also asserts that, notwithstanding Decedent's failure to comply with the Plan's terms, she is eligible to receive Optional Life insurance benefits because Defendants waived the evidence of insurability requirement.  However, neither of the documents upon which Lesser bases her waiver argument was prepared by Defendants, and the Plan explicitly states that its terms cannot be modified by extrinsic documents.  As will be demonstrated below, Defendants never waived any of the Plan requirements, and the acts of third parties do not suffice to effect a waiver.

Further, serving double duty to support not only her waiver argument but also her "reasonable expectations" argument, Lesser relies heavily on District Judge Gary Feess' opinion in *Gaines v. Sargent Fletcher Inc. Group Life Insurance Plan*, 329 F.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

Supp. 2d 1198 (C.D. Cal. 2004). Even assuming *arguendo* that the decision were binding precedent (which it is not), *Gaines* is factually and legally distinguishable for a variety of reasons, including:

- The plan language at issue in *Gaines* was deemed to be ambiguous, whereas the Northrop Plan's evidence of insurability provisions are unambiguous;

- *Gaines* involved the admission by the employer's human resources manager that she was unaware of the plan's "evidence of good health" requirements and that employees were not told of the need to supply health information (a fact that Judge Feess expressly found to be "most noteworthy"); here, no comparable concession by Northrop exists;

- In *Gaines*, "none of the information given to Plaintiff specified that a personal health statement was required for enrollment" (including a brochure given to the employee), whereas Decedent Barry Lesser was provided with specific information from Northrop in April 2007 explaining that evidence of insurability was required to obtain Optional Life insurance coverage (in addition to the Plan documents spelling out that requirement);

- Unlike Hartford (the insurer/claim administrator in *Gaines*), MetLife was never provided (prior to Decedent's death) with a list of employees for whom premiums were being remitted or their respective insurance coverage elections;

- Unlike Hartford (which had been sent the enrollment forms), MetLife never received a copy of Decedent's on-line application; and

- Unlike the *de novo* review of Hartford's claim-denial decision in *Gaines*, the abuse of discretion standard of judicial review applies to MetLife's claim decision.

Devoting so much effort to her recitation of *Gaines*, Lesser completely ignores other issues that must be resolved before this Court could ever issue judgment in her favor.  For example, she omits any discussion regarding the applicable standard of judicial review, including how she satisfies her burden of proof under the governing abuse of discretion standard.  Similarly, despite being advised in this Court's ruling on Defendants' summary judgment motion that a genuine issue of material fact exists with respect to whether her October 24, 2008 letter constitutes a request for an administrative appeal, Lesser skips the issue entirely in her Opening Trial Brief.  Instead, she brazenly refers to her letter as an appeal (*see*, p. 3, ll. 3-4), but she offers no factual discussion or legal authority for her conclusion.

The Court should not be distracted by Lesser's focus on ancillary and irrelevant issues, and it should instead find that the claim file demonstrates that:  (1) Decedent failed to provide evidence of insurability, despite being aware of this requirement based on the terms of the Plan and a 2007 worksheet; (2) MetLife's claim decision is consistent with the clear and unambiguous terms of the Plan, and given the broad discretionary authority granted to MetLife, was reasonable and should be upheld; and (3) Lesser failed to appeal MetLife's claim decision, and exhaust her administrative remedies as required by the terms of the Plan, and therefore the lawsuit is premature.

Accordingly, Defendants respectfully request that this Court render judgment in their favor.

## 2. DEFENDANTS DID NOT "SANITIZE" THE CLAIM FILE; THE DOCUMENTS LESSER SUBMITTED IN RELATION TO HER COMPLAINT TO THE DOI WERE MAINTAINED BY METLIFE IN A SEPARATE REGULATORY FILE

### A. Defendants Did Not Remove Documents From The Claim File

The Plan documents and claim file establish that Decedent was required to present evidence of insurability when he attempted to dramatically increase his life insurance coverage less than one year before his death, with full knowledge of his three-year history of renal disease and nine-year history of diabetes. Faced with these facts, Lesser makes the inflammatory and baseless accusation that Defendants must have "sanitized" the claim file (*see* Opening Trial Brief, pp. 3-6) and removed documents that purportedly show that evidence of insurability was *not* required. Lesser claims that she has "smoking gun evidence" (*id.* at p. 3, l. 17) in the form of exhibits attached to the declarations of Lesser and her attorney Paul Fleishman that demonstrate that documents were removed. *See* Docket Nos. 43-1 to 43-5.

First, Lesser's accusation is untrue. Defendants did not remove any documents from the claim file. The documents Lesser attaches as exhibits were submitted in support of her complaint to the Department of Insurance ("DOI") and were maintained by MetLife in a separate regulatory file. All but one of the documents were submitted <u>after</u> MetLife made its claim determination and therefore could not have been considered by MetLife when it rendered its decision. Second, the accusation does not make any sense. The documents attached as exhibits to Lesser's papers were submitted to MetLife by Lesser or represent communications from the DOI to Lesser. It defies common sense to suggest that Defendants attempted to

"hide" documents from Lesser that MetLife received from Lesser or that represented communications to Lesser.

As explained in the Declaration of Pati Casey, submitted in connection with Defendants' Opening Trial Brief (*see* Docket No. 46), the documents that Lesser alleges were improperly removed from the claim file, *were never part of the claim file*. Instead, consistent with MetLife's standard procedure for administering group life insurance benefits, the documents were part of a separate regulatory file maintained by MetLife regarding Lesser's DOI complaint. *See* Casey Dec., ¶ 1-3. A full and complete copy of MetLife's DOI file was provided to the Court (and Lesser) as Exhibit "B" to Casey's Declaration so the Court can satisfy itself that Defendants were not, and are not, trying to hide the existence of any documents or secret Plan provisions that would waive the evidence of insurability requirements.[1]

To support her charge that Defendants "sanitized" the claim file, Lesser poses five questions.  Although the questions pertain to irrelevant matters, Defendants will respond to them directly, so Lesser's attempt to create a "sideshow" can be shown for what it is:

**1.  Where is the DOI inquiry?**  The documents were maintained in a separate regulatory file, and a complete copy of those documents has been provided to Lesser and to the Court.

**2.  Where is the online application Mr. Lesser completed to enroll in Option 9?**  Any such documents would have been maintained by Northrop's third-

---

[1]  The Court will recall that in Lesser's Response brief filed in support of her motion for leave to file an amended complaint, she hypothesized "I'll bet the DOI inquiry deals with Option 9 and MetLife is hiding it." *See*, p. 8, ll. 26-27.  Exhibit "B" proves the error of her wager.

party recordkeeper, and were never provided to MetLife. *See* Declaration of Virginia Fawkes ("Fawkes Dec."), ¶ 2. Tellingly, even though Lesser propounded written discovery requests to Defendants in this case, the scope of that discovery never asked for a copy of Decedent's "online application." Nor did she attempt to secure copies of these documents by subpoenaing Northrop or its recordkeeper. Instead, she continually refers to the absence of documentation in an effort to portray Defendants in a negative light, without recognizing that she took no efforts to gather the documentation herself.[2]

**3. Where is the original impact list listing Mr. Lesser?** These documents were created and maintained by Northrop's third-party recordkeeper as a result of an apparent systems error by the recordkeeper, and they were never provided to MetLife. *See* Fawkes Dec., ¶ 3. In fact, MetLife was not even aware of the systems error until it made the inquiry on Lesser's claim. Like her approach regarding the online application, Lesser took no initiative to pursue this document in discovery.

**4. Where are the records of phone calls Mrs. Lesser made to MetLife?** Lesser seems to expect that the claim file will contain "telephone logs" of every call between Lesser and MetLife. While she alleges that records of the telephone calls are "missing," she has no evidence that such records exist, much less that they were removed from the claim file. More fundamentally, as Lesser notes in her Opening Trial Brief, the claim file contains "several references to these calls" and their content. *See id*. at p. 4, ll. 24-25. Further, even if such a telephone log existed, it would not contain evidence that Defendants waived the right to require evidence of

[2] Lesser's failure to take affirmative steps to secure copies of documents that she now insists are relevant is particularly troublesome (for her) because she carries the burden of proving her entitlement to benefits under the Plan. *See Thomas v. Silgan Container Corp.*, 2001 WL 590013, *4 (N.D. Cal. 2001) ("Because Thomas is seeking to prove his entitlement to benefits under the Plan, the burden in this case lies with him.").

1   insurability.  Indeed, Lesser makes no such allegation.  Instead, Lesser's charge that

2   the claim file is "missing" records of telephone calls is simply another red herring

3   designed to shift this Court's attention away from the central issue of this litigation –

4   Decedent's failure to comply with the Plan's terms requiring evidence of insurability.

5

6       **5.  Why wasn't the letter sent by MetLife to Mrs. Lesser on November 20,**

7   **2008 in the administrative record provided by Defendants?**  This correspondence

8   is not located in the claim file because it relates solely to Lesser's DOI complaint and

9   was sent after MetLife's claim decision.  Indeed, the letter specifically advises that

10  "[t]his correspondence is *in response to your inquiry* concerning the Group Life

11  Insurance benefit due on the life of Barry Lesser *that you filed with the State of CA*

12  *Insurance commissioner*."  *See* Casey Dec., Exhibit "B" at MET-LES-DOI 55 –

13  MET-LES-DOI 56.  Accordingly, this document is part of the regulatory file, not the

14  claim file.

15

16      As set forth above, Lesser's accusation that Defendants sanitized the claim file

17  or otherwise "acted in bad faith by not providing either the plaintiff or the court with

18  the entire administrative record" (*see* Opening Trial Brief, p. 5, ll. 12-13) is

19  unfounded, untrue and makes no sense.  Nor was Defendants' pursuit of a summary

20  judgment motion "compound[ing] their bad faith" (*see id*. at p. 5, ll. 13-15), because

21  that motion was based upon Lesser's failure to exhaust her administrative remedies as

22  required by ERISA and by the Plan.  Far from finding that the motion was brought in

23  bad faith, this Court simply ruled that a genuine issue of material fact existed as to

24  whether Lesser appealed the claim decision.  *See* Order Denying Defendants' Motion

25  for Summary Judgment, Docket No. 35.

26

27      Thus, contrary to Lesser's accusations, the documents that she asserts were

28  "removed" were never part of the claim file in the first instance.

**B.** **The Documents Submitted By Lesser In Support Of Her DOI Complaint Do Not Establish That She Exhausted Her Administrative Remedies; To The Contrary, They Confirm Both That She Never Pursued An Appeal And That This Lawsuit Is Premature**

The claim file provides an accurate portrait of what occurred in this case: Despite the unambiguous terms of the Plan requiring that Decedent submit evidence of insurability in order to increase his life insurance coverage, he failed to present that requisite information.  Unfortunately, premiums were deducted from his paycheck due to the processing error by Northrop's third-party recordkeeper.  MetLife reviewed Lesser's claim, and pursuant to the terms of the Plan (and the April 2007 worksheet Northrop sent to Decedent noting the evidence of insurability requirement), MetLife denied her claim for Optional Life insurance benefits.  Thereafter, Lesser failed to appeal the claim decision, and exhaust her administrative remedies, as required by ERISA and by the Plan.

Despite Lesser's assertion, the documents from MetLife's regulatory file do not demonstrate that she exhausted her administrative remedies.  Specifically, Lesser claims that her October 24, 2008 letter constitutes an appeal letter and that MetLife's November 20, 2008 letter constitutes a final denial of her administrative appeal.  *See* Opening Trial Brief, p. 3, ll. 3-6.  As Defendants demonstrated in their Opening Trial Brief, she is incorrect.

The October 24, 2008 letter did not state why "the claim was improperly decided" as required by the Plan.  (118)  Nowhere in the letter does Lesser state that she is appealing the claim decision, and therefore MetLife did not believe that Lesser intended the letter to be an appeal of the claim decision.  As Pati Casey explained in

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

her declaration, neither she, "nor to the best of my knowledge anyone else at MetLife considered Lesser's October 24, 2008 letter to be a request for an administrative appeal of MetLife's September 29, 2008 claim denial." (449); *see also* Defendants' Opening Trial Brief, Section 3(A).

Similarly, MetLife's November 20, 2008 letter is not a final denial letter. First, the letter does not include the "the reason(s) why the claim you appealed is being denied" or "a statement of [Lesser's] right to bring a civil action," which the Plan states will be included in a "final written decision." (118) More importantly, the letter's first sentence specifically informed Lesser that "[t]his correspondence is *in response to your inquiry* concerning the Group Life Insurance benefit due on the life of Barry Lesser *that you filed with the State of CA Insurance commissioner*." *See* Casey Dec., Exhibit "B" at MET-LES-DOI 55 – MET-LES-DOI 56.

Thus, neither of these exhibits, nor the other documents Lesser presented to the Court, demonstrate that she administratively appealed the initial claim decision or that she is otherwise entitled to benefits.

## 3.   DEFENDANTS DID NOT WAIVE THE PLAN'S EVIDENCE-OF-INSURABILITY REQUIREMENT

Lesser attempts to excuse Decedent's failure to provide evidence of insurability by asserting that Defendants waived the right to enforce those Plan provisions. Her argument fails for two reasons. First, Lesser's evidence of Defendants' waiver is based on documents not prepared by either of the Defendants, and, further, the Plan explicitly states its terms cannot be modified by documents that are not part of the group contract. Second, the case law cited by Lesser is readily distinguishable from

the present situation.  Accordingly, the Court should enforce the unambiguous terms of the Plan.

### A.   Neither Defendant Voluntarily (Or Intentionally) Relinquished The Right To Require Evidence Of Insurability

To support her argument that Defendants waived the right to require evidence of insurability, Lesser points to two documents.  *See* Opening Trial Brief, p. 9, ll. 6-15.  The first is an e-mail sent September 2, 2008.  (127)  Lesser claims that the e-mail "indicates that MetLife was aware before Mr. Lesser's death of an 'issue' where a 600K election was available to employees without EOI."  *See id.* at p. 9, ll. 6-11.  Lesser mischaracterizes this e-mail.  First, the e-mail's signature block indicates that it was not prepared by MetLife, but instead by Northrop's third-party recordkeeper.  Second, the e-mail was sent several months *after* Decedent's death (he died on May 21, 2008), and therefore it cannot prove that MetLife had knowledge of any of the statements in the e-mail prior to Decedent's death.  Finally, this e-mail corroborates Defendants' position, as it specifically states that Decedent "would not be eligible for any optional life insurance coverage without EOI."  (127)

The other document on which Lesser relies is not contained in the claim file, and therefore it should not even be considered by the Court.  *See Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955, 970 (9th Cir. 2006) (when applying the abuse of discretion standard of review, "the decision on the merits … must rest on the administrative record").[3]  However, to the extent the Court takes this document into

_____

[3]  Further, Lesser submitted no declaration or affidavit authenticating the document. Defendants therefore object to the Court's consideration of the exhibit because a proper foundation must be established for documents offered to the Court.  *See* FRE 901 ("Authentication or identification [is] a condition precedent to admissibility"). Defendants also object that the exhibit is not relevant, and therefore should not be considered by the Court.  *See* FRE 401-402.

account, Defendants submit that Lesser has misconstrued its content.  First, Lesser claims, without support, that the document is a "MetLife computer readout."  *See* Opening Trial Brief, p. 9, l. 11.  In fact, the date stamp located on the bottom of the document indicated that MetLife *received* -- rather than created -- the document.  *See* Fawkes Dec., ¶ 4.  Regardless, this document merely indicates that Decedent was enrolled in the Optional Life insurance program.  Defendants do not dispute this fact, but, again, maintain that his enrollment was improper and based on a processing error.[4]

Indeed, Lesser repeats the same error she made in her Opposition to Defendants' summary judgment motion:  She lumps both MetLife and the Plan together under the generic title of "Defendants," but then refers to acts taken by neither.  For example, she makes the following charge:  "Defendants are trying to retroactively deny Mr. Lesser's application for the life insurance policy Option 9 after **sending him confirmations** that he was covered under that option and **collecting premiums** from him up until his death."  *See*, page 8, lines 22-24 (emphasis added).  Most assuredly, neither of the Defendants ever sent him confirmations or collected premiums.

Thus, while waiver is admittedly the "voluntary or intentional relinquishment of a known right," the underlying acts must have been taken by the party against whom it is asserted.  *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995) (California courts will find waiver when *a party intentionally relinquishes* a known right after knowledge of the facts); *see also U.S. v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988) ("Waiver is the intentional relinquishment of a known right *with knowledge of its existence and the intent to relinquish it*.");

---

[4]  After MetLife learned that Northrop mistakenly deducted premium payments for the Optional Life insurance coverage, that money was refunded to Lesser.  (121)

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

*Burdick v. Union Sec. Ins. Co.*, 2009 WL 6541608, *11 (C.D. Cal. 2009) ("the pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right") (internal citations removed).  Thus, because the acts on which Lesser relies to establish waiver were not taken by either of the Defendants, they cannot constitute waiver.[5]

Finally, even if Lesser's characterizations of these documents were correct (which Defendants do not concede), they cannot modify the terms of the Plan.  The Plan specifically limits the documents that are part of the Plan and that can be used to modify its terms, stating that the "Entire Contract" consists of:

> Your insurance is provided under a contract of group insurance with the Policyholder.  The entire contract with the Policyholder is made up of the following:
>
> 1. the Group Policy and its Exhibits, which include the certificate(s);
> 2. the Policyholder's application; and
> 3. any amendments and/or endorsements to the Group Policy. (114)

Thus, Lesser's argument – that an e-mail not sent by either of the Defendants or that an unauthenticated document not part of the claim file can be used to modify the Plan – is unsupportable.

_____

[5]  Further, Lesser has the burden of establishing waiver "by clear and convincing evidence that does not leave the matter to speculation."  *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (1994).  She does not come close to satisfying this standard.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

**B.**  ***Gaines*, The Primary Case Upon Which Lesser Bases Her Entitlement To Optional Life Insurance Benefits, Is Readily Distinguishable, Both Factually and Legally**

In lieu of any discussion of the applicable standard of review, how she satisfies her burden of proof under that standard and a discussion of whether her October 24, 2008 letter constitutes a request for an administrative appeal, Lesser's Opening Trial Brief instead quotes large passages from *Gaines v. Sargent Fletcher Inc. Group Life Insurance Plan*, 329 F. Supp. 2d 1198 (C.D. Cal. 2004).  Lesser offers little analysis of this case, instead presumably relying on the Court to conclude that because *Gaines* also involved an attempt to increase life insurance coverage without providing evidence of insurability, this Court should award her Optional Life insurance benefits.  However, *Gaines* is distinguishable in a number of respects, both factually and legally, and that decision should have no impact on the outcome of this litigation.

First, in *Gaines*, Judge Feess stated "**[w]hat the Court finds most noteworthy** is that Defendants [denied plaintiff's claim for life insurance benefits because no statement of health was provided] in the face of the concession by the Sargent Fletcher Human Resources Manager that she was unaware of the requirements being asserted as a defense to Gaines's claim, and that no Sargent Fletcher employees had been advised of the need to supply the information that Gaines had failed to provide."  *Id*. at 1203 (emphasis added).  However, Lesser cannot point to any "concession" by Northrop's human resources manager, in part because she chose not to conduct any depositions in this case (much less ones of Northrop's human resources manager).[6]  Thus, no admission exists, by Northrop or any other person or

---

[6]  This is yet another example of Lesser's relying on the absence of information to demonstrate her entitlement to benefits, despite taking no affirmative steps to gather the possibly relevant information herself.

entity, that Decedent was unaware of the Plan's evidence of insurability requirements.  Indeed, the opposite is true -- Northrop specifically informed Decedent of the evidence of insurability requirement.  On April 11, 2007, Northrop mailed Decedent a document entitled "Health Welfare Annual Enrollment Worksheet" detailing his current coverage and explaining that in order to obtain *any* amount of Optional Life insurance coverage, "Evidence of Insurability is required."  (51) Accordingly, the fact that Judge Feess found "most noteworthy" is wholly absent from this case because Northrop specifically informed Decedent of the evidence of insurability requirement.[7]

A second distinguishing factor is that the result in *Gaines* was driven in large part upon a finding that the plan's evidence of insurability requirement was not contained in a brochure given to the employee and "none of the information given to Plaintiff specified that a personal health statement was required for enrollment."  *Id.* at 1209.  Lesser cannot show that her situation is at all similar in that regard.  In April 2007, less than three months before Decedent attempted to increase his coverage, he received a coverage worksheet from Northrop explaining that he would need to present evidence of insurability if he wanted to increase coverage by *any amount*. (51)  In addition, the evidence of insurability requirement was plainly evident from the terms of the Plan, of which Decedent had constructive, if not actual, knowledge. *Schultz v. MetLife*, 872 F.2d 676, 680 (5th Cir. 1989); *Barnes v. Lacy*, 927 F.2d 539, 543 (11th Cir.), *cert. denied*, 502 U.S. 938 (1991); *Castello v. Gamache*, 593 F.2d 358, 360-61 (8th Cir. 1979).

---

[7]  Tellingly, Northrop agreed with MetLife's claim decision, as evidenced by Northrop's March 3, 2009 letter to Lesser explaining that "[b]ecause your husband increased his coverage without EOI approval by Met Life, his life insurance could not be increased and payroll deductions for the new amount should not have been taken." (169-170; 374-375)

Third, the holding in *Gaines* was guided by a finding that the plan terms discussing evidence of good health were ambiguous.  *Id*. at 1217-1218.  By contrast, the Northrop Plan language regarding the evidence of insurability requirement is unambiguous.  In a section entitled "ELIGIBILITY PROVISIONS:  INSURANCE FOR YOU," the Plan explains that in order to participate in the Optional Life insurance portion of the Plan, a participant must complete the required form, and:

> You must give evidence of Your Insurability satisfactory to Us at Your expense if You are required to do so under the section entitled EVIDENCE OF INSURABILITY.  (91)

Simply put, the declaration "[y]ou must give evidence of Your Insurability" is in no way ambiguous.

The Plan also unambiguously details the situations when a participant is required to provide evidence of insurability and the outcome if such evidence is not provided, including, in relevant part:

> 2. if You make a request during an annual enrollment period to increase the amount of Your Optional Life Insurance.
>
> **If You do not give Us evidence of insurability** or the evidence of insurability is not accepted by Us as satisfactory, the amount of **Your Optional Life Insurance will not be increased.**
>
> …
>
> 4. if You make a late request for Optional Life Insurance.  A late request is one made more than 31 days after You become eligible.
>
> **If You do not give Us evidence of insurability** or the evidence of insurability is not accepted by Us as satisfactory, **You will not be covered for Optional Life Insurance.**  (101; emphasis added)

Thus, because the Plan terms are unambiguous, *Gaines* is inapplicable to this case.

The fact that the Plan's terms are unambiguous also prevents Lesser from obtaining Optional Life insurance benefits through the doctrine of reasonable expectations. In *Gaines*, the court explained that the doctrine of reasonable expectations is applied only when a provision "in an insurance policy is not a clear, plain, and conspicuous statement." *Id*. at 1216. As demonstrated above, the Plan's evidence of insurability provisions are unambiguous, and therefore the doctrine of reasonable expectations does not apply.

Further, the doctrine of reasonable expectations does not apply here because, as explained in *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir. 1994), the doctrine is one of "insurance contract interpretation" that pertains to *exclusionary clauses*. In *Saltarelli*, there was no question that the claimant qualified for some coverage under the Plan; the only question was whether the administrator could deny plaintiff's claim for benefits based on an exclusion for "pre-existing conditions." *Id*. at 385. Here, the provision upon which MetLife based its denial decision is not an exclusionary clause that otherwise limits coverage available to a claimant.[8] Instead, the evidence of insurability requirement is related to whether the claimant had coverage in the first instance. Thus, Lesser's attempt to rely on the doctrine of reasonable expectations is misplaced.

Another distinguishing fact between *Gaines* and this matter is that Sargent Fletcher's Human Resources Manager "testified that along with the premium payments, each month, Sargent Fletcher sent a list of employees who had elected coverage to Hartford. The employee list identified the employee, the type of

---

[8] In life insurance policies, exclusionary clauses typically restrict the payment of benefits based on the cause of death. For example, deaths causes by acts of war or suicide are often excluded from payment. *See e.g., Minton v. Stuyvesant Life Ins. Co.*, 373 F. Supp. 33 (D.C. Nev. 1974) ("The specific exclusions in the policy are (1) suicide or intentionally self-inflicted injury; (2) bacterial infection; (3) medical or surgical treatment; (4) war or any act of war…").

coverage purchased, and the amount of monthly premium payments paid by the employee.  Plaintiff was on the list and was identified as having purchased $150,000 in supplemental dependant life insurance." *Id.* at 1207.  Again, the opposite is true here:  Prior to Barry Lesser's death, MetLife was never provided with a list setting forth Decedent's name or information relating to his specific coverage elections.  *See* Fawkes Dec., ¶ 5.

Nor can Lesser demonstrate that MetLife or the Plan knew that Northrop withheld the premiums from Decedent's paychecks and was aware of his attempt to secure additional life insurance coverage.  As explained in *Williams v. American Casualty Co.*, 6 Cal. 3d 266, 273 (1971), at least two stages of premium payment occur in a group insurance context:  (1) payment from the employee to the employer, normally by means of payroll deduction; and (2) payment from the employer to the insurer.  This information was gathered, processed and maintained by Northrop's third-party administrator; the group premiums were forwarded to MetLife without any breakdown of individual employee amounts.  That is, the bulk premiums are not accompanied by a monthly list of individual participants or their level of coverage. *See* Fawkes Dec., ¶ 5.  Only when an employee dies is MetLife notified of the potential coverage at issue.  Thus, Lesser cannot demonstrate that MetLife knew that premiums were withheld from Decedent's paycheck.

*Gaines* is also distinguishable because the decision was based in part on the fact that plaintiff's initial "enrollment form was sent to Hartford." *Id.* at 1207.  Here, MetLife never received an online application; any such documentation would have been maintained by Northrop's third-party administrator.  *See* Fawkes Dec., ¶ 2. Lesser has no evidence to the contrary.

Finally, in *Gaines*, the court found that Hartford's claim-denial decision should be reviewed under the *de novo* standard of judicial review, and therefore its interpretations of the plan provisions were not entitled to any deference.  *Id*. at 1215. Here, the Plan vests MetLife with broad discretionary power to make claim decisions and to interpret the terms of the Plan.  (118); *see also* Defendants' Opening Trial Brief, Section 4.  Thus, while Hartford's claim determinations were entitled to no deference, MetLife's claim decision "must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith."  *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000) (emphasis added).[9]

Overall, Lesser seems to believe that simply citing select passages from *Gaines* will result in a finding that she is entitled to Optional Life insurance benefits, but a detailed analysis of that case reveals that it is factually and legally distinguishable. *Gaines* has no bearing on the outcome of this case.

**C.**   **The Waiver Cases Offered By Lesser Do Not Support Her Claim That Defendants Waived The Evidence Of Insurability Requirement**

To support her position that Defendants waived the right to require evidence of insurability, Lesser offers a string-citation to five cases (other than *Gaines*) – without any analysis or explanation.  The cases are distinguishable and do not support Lesser's assertion.

_____
[9]  While the Hartford plan contained broad discretionary language, Judge Feess found – in accordance with prior case law – that "material probative evidence" confirmed the existence of a conflict of interest, thereby reducing the standard to *de novo*.  However, the Ninth Circuit's subsequent ruling in *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955, 970 (9th Cir. 2006), confirms that the abuse of discretion standard applies, irrespective of any conflict-of-interest claims.  *Id*. at 965; *see also MetLife v. Glenn*, 128 S. Ct. 2343 (2008).  That is, the *de novo* standard should never apply to this case.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-18-

Most of Lesser's cases are distinguishable because the decisions are based on a finding that the administrator had express knowledge of some determinative fact over a long period of time, such that the administrator waived the right to enforce the policy provision by not raising the issue sooner.  For example, in *Berger v. Life Insurance Co. of North America*, 103 F. Supp. 1344, 1349 (N.D. Ga. 2000), the district court only found waiver because it was "undisputed that LINA knew of Mr. Berger's continued part-time employment for over three years before it took any action."  Similarly, in *Pitts v. American Security Life Insurance Co.*, 931 F.2d 351, 358 (5th Cir. 1991), the court held that the insurer accepted premiums after learning "beyond all doubt" that the insured was the only person on the policy, and that a prerequisite for coverage had not been met.  *See also Furleigh v. Allied Group Inc.*, 281 F. Supp. 2d 972 (N.D. Iowa 2003) (finding that because the insurer continually reviewed records submitted by the claimant, it waived the right to assert a defense based on failure to timely submit proof of loss); *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 171 F.3d 634, 645 (5th Cir. 1999) (holding that a reasonable jury might find that the administrator knew of the claimant's illness, and also knew that he stopped working, well before he made his claim); *Gaines*, *supra*, at 1222 (defendants "knew" that plaintiff and many others had not submitted a personal health statement, knew premiums were being paid and accepted premiums without objection).

Thus, in each of the cases cited by Lesser, the respective courts found that an administrator had actual and affirmative knowledge of the facts that led to a waiver of a plan provision.  Here, Lesser cannot offer evidence that Defendants knew that Decedent dramatically increased his coverage without providing evidence of insurability.

The remaining case, *Lauder v. First Unum Life Insurance Co.*, 284 F.3d 375 (2d Cir. 2002), is similarly distinguishable.  In *Lauder*, when presented with

plaintiff's claim for disability benefits, the administrator focused its review on the issues of coverage, choosing not to investigate the underlying disability claim. After a finding by the district court that plaintiff was covered under the plan, the administrator argued that it should have the opportunity to review whether the plaintiff was actually disabled. The Second Circuit explained that because the administrator chose to focus solely on the coverage issue, even though "it had all her evidence of her disability before it, and could easily have evaluated that evidence to assert a lack of disability defense," it "should not now get another proverbial bite at the apple." The Second Circuit accordingly ruled that the administrator waived the right to assert that the plaintiff was not disabled. Here, Defendants are not attempting to raise a defense that they chose not to pursue in the first instance – Decedent's failure to present evidence of insurability was **the** basis for MetLife's denial of Lesser's claim. Accordingly, *Lauder* offers no support to Lesser.

## 4.   <u>CONCLUSION</u>

Put simply, neither the "waiver" doctrine nor the "reasonable expectations" doctrine excuses Decedent from fulfilling the Plan's requirement to present evidence of insurability in order to increase his coverage. Moreover, the mistaken payroll deductions -- in the cumulative total of $1,779.92 in insurance premiums (which were later fully refunded) -- do not override the unambiguous Plan terms and should not result in the $600,000 coverage sought by Lesser. Rather, Lesser's argument is simply another attempt to divert the Court's attention away from her failure to exhaust administrative remedies and the reasonableness of MetLife's claim decision.

As explained in Defendants' Opening Trial Brief, the determination that Lesser was not entitled to Optional Life insurance benefits is amply supported by substantial

evidence in the claim file, and that decision is based upon a reasonable interpretation of the terms of the Plan.  In her Opening Trial Brief, Lesser fails to offer any argument establishing that MetLife's claim decision was unreasonable, instead focusing -- as she must -- on ancillary and irrelevant issues.  However, when properly reviewed under the highly deferential "abuse of discretion" standard, Defendants respectfully submit that Lesser is not entitled to additional benefits under the Plan.

DATED:  October 5, 2010                    BARGER & WOLEN LLP


                                           By:  /s/ *Robert K. Renner*
                                                ROBERT K. RENNER
                                                SCOTT E. CALVERT
                                                Attorneys for Defendants
                                                Metropolitan Life Insurance Company and
                                                Northrop Grumman Health Plan

<div align="center">PROOF OF SERVICE</div>

STATE OF CALIFORNIA, COUNTY OF ORANGE

   I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  Barger & Wolen LLP, 19800 MacArthur Boulevard, 8th Floor, Irvine, California  92612.

   On **October 5, 2010**, I served the foregoing document(s) described as **DEFENDANTS' RESPONDING TRIAL BRIEF** on the interested parties in this action by causing it to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document on individual(s) listed below:

Charles J. Fleishman, Esq.        Attorneys for Plaintiff
Paul Fleishman, Esq.          Robin Lesser
The Fleishman Law Firm
19839 Nordhoff Street
Northridge, California  91324
Telephone:  (818) 350-6285
Facsimile:  (818) 350-6272
email: erisa@erisarights.com

**[X]  (FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  Executed at Irvine, California on **October 5, 2010.**

NAME: Derek A. Sutter        */s/ Derek A. Sutter*
                  (Signature)