THE FLEISHMAN LAW FIRM
Charles J. Fleishman Bar# 46405
Paul A. Fleishman Bar# 251657
19839 Nordhoff St., Northridge, California 91324
Telephone: (818) 350-6285
FAX: (818) 350-6272
erisa@erisarights.com
Attorneys for **Plaintiff**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LESSER | NO. CV 09-5699 RSWL(CWx) |
| Plaintiff, | PLAINTIFF'S RESPONDING TRIAL BRIEF |
| vs. | |
| METROPOLITAN LIFE INSURANCE COMPANY, a corporation; NORTHROP GRUMMAN HEALTH PLAN, an ERISA plan; DOES 1 through 10, inclusive, | Hearing Date: October 19, 2010<br>Time: 9 am<br>Courtroom: 21 |
| Defendants. | |

## I. DEFENDANTS HAVE WITHHELD DOCUMENTS AND LIED ABOUT IT AND PLAINTIFF CAN PROVE IT.

Defendants have impermissibly withheld documents from the Plaintiff and the court until the eve of trial. Only after Plaintiff provided the court with proof that the California Department of Insurance (DOI) had provided these documents to MetLife did Defendants relent and admit that MetLife had been in possession of the documents the entire time. In order to excuse their own failure to provide these documents Defendants have claimed 1) that they were part of a separate regulatory file that deals exclusively with the DOI's inquiry regarding Mrs. Lesser's claim, and

2) that Plaintiff never sought these records in discovery.  These claims are just more lies.

**1)  Contrary To The Claim Of Defendants, There Never Was A DOI File.**

Defendants contend that their newly provided "Exhibit B" was "a separate regulatory file maintained by MetLife regarding Mrs. Lesser's DOI complaint." Docket #50 p.5/7-9.  The DOI first contacted MetLife about Mrs. Lesser's complaint on September 16, 2008.  B 3.  Before September 16, MetLife had no reason to create a regulatory file since there was no DOI complaint.

One of the exhibits Plaintiff has provided to the court is a computer printout that confirms that as of June 2, 2008, after Mr. Lesser had already died, Mr. Lesser was covered under option 9 for $600,000.  Exhibit 5.  This printout was stamped by MetLife on June 11, 2008, 3 months before the DOI first contacted MetLife regarding Mrs. Lesser's claim.  According to Defendants, the date stamp located on the bottom of the document indicates the date that MetLife received the document. Docket #50 p.11/3-4.  Thus MetLife received Exhibit 5 three months before there was any DOI complaint, and therefore three months before MetLife could have reasonably begun maintaining a separate regulatory file; Exhibit 5 is not contained in Defendants' "Exhibit A" (Mrs. Lesser's claim file) it is only contained in Defendants' "Exhibit B" (the phony DOI file). B 32.

Why isn't Exhibit 5 in Defendants' "Exhibit A"?  How did MetLife keep Exhibit 5 in its regulatory file before there was a regulatory file in which to keep it? MetLife should have to answer the question.

Here is another one for MetLife to answer.  Why did Defendants recently add Mrs. Lesser's October 24, 2008 letter to "Exhibit A" (A 449), but fail to add either of the documents that were sent with that letter?  Exhibits 1 and 2.

## 2) Defense Counsel Is Lying About Discovery And Has Deliberately Hidden Important Information.

When an attorney licensed by the State of California voices an objection that material sought by the other side is irrelevant and would violate rights of privacy, he is representing to the other side and to the court that he has personally inspected the items sought. Since he represents that he has inspected the items, he is also representing that the items exist and that he has access to them. *Bihun v. AT&T,* 13 Cal.App.4th 976, 991 n.5 (1993).

In response to the plaintiff's argument that the Defendants have sanitized the record and have hidden important documents, such as the missing "original impact list," the defendants respond, in paragraph 3 of the declaration under penalty of perjury of Virginia Fawkes, that "The 'original impact list'. . . was never provided to MetLife."[1] It is an absolute utter and complete lie. The writer of the declaration should be prosecuted for perjury and the attorneys that presented the declaration to this court, knowing that they were presenting perjured testimony, should be also.

Mr. Renner writes, in his Defendants' Responding Trial Brief Docket #50 p.6/10-15, that the "original impact list" was "never provided to MetLife." He further writes that "Lesser took no initiative to pursue this document in discovery." Shame on him. Both statements are lies.

On March 9, 2010, the Plaintiff sent Defendants a request for the production of documents. The Defendants, through their lawyers, objected that the request was vague. In a letter dated April 13, 2010, (Exhibit 10) the Plaintiff narrowed the request. Among the documents sought in the narrowed request, the "original impact list" was specifically stated. The Defendant's attorneys responded on May

---

[1] Plaintiff assumes that when the Defendants claim that MetLife never had a particular document, they also mean that the Defendant Plan didn't have the document either. If it were otherwise, if MetLife did not have the document but the plan did, there would be no excuse for the failure of the Defendants to produce the document in the administrative record or in response to discovery.

11 with amended responses to Plaintiff's requests for documents. Exhibit 11. Specifically with regard to the request for production of the "original impact list," the Defendants' attorneys responded,

> "Defendants also object to this request on the grounds that it seeks documents that are neither relevant to the claims or defenses of the parties to this litigation, nor reasonably calculated to lead to the discovery of admissible evidence . . . Defendants further object that the requested documents contain private and confidential information of Northrop Grumman employees. . . " Exhibit 11 p.5/14-22.

To make the objection that the "original impact list" was irrelevant and its production would violate rights of privacy, the objecting lawyers, under California law, were required to have examined the document. If they examined it, they had access to it. Mr. Renner's argument in his Defendants' Responding Trial Brief that if the Plaintiff wanted the "original impact list" she should have sought it in discovery is thus a lie. She did seek it in discovery. The claim that MetLife never had the document, if it is being used to excuse the failure to furnish the Plaintiff with the document, is a lie. The Defendants' lawyers had the requested document as is evidenced by their having examined it. Why didn't they give it to the Plaintiff? It wasn't because it was not asked for as Mr. Renner argues.

In *Bihun*, supra., the same shenanigans pulled by the Defendants in this case resulted in a jury instruction allowing the jury to draw an inference that there was something damaging to defendant's case contained in the suppressed documents. This court should draw a similar inference with regard to the Defendant's continued suppression of documents including the "original impact list" and Mr. Lesser's online application for Option 9 life insurance coverage.

It is absolutely amazing that the Defendants would contend with a straight face that they never sought and received Mr. Lesser's application for Option 9 life insurance coverage. Yet that is exactly what the Defendants are saying when that document is missing from the so called administrative record and there is nothing

in that collection of paper that indicates MetLife even asked for it. It's like a court deciding a case where there is no complaint.

It is also amazing that the defendants argue that their failure to produce requested documents is excused somehow because the Plaintiff did not subpoena them from Northrop. Why in the world would the Plaintiff, seeking benefits under an ERISA plan insured by MetLife, seek documents evidencing the terms of coverage and the application of the person who claims to be insured from any other entity other than the Plan and MetLife? Even if the documents were in the possession of thousands of other entities, surely the entities that would most likely have possession of the documents would be the insuring insurance company and the Plan itself. Even if, for some unbelievable reason, neither MetLife nor the Plan (both named defendants) had the documents listing the terms of the plan and a plan member's application, surely once a dispute arose about the terms of the plan, MetLife and the Plan would obtain the documents.

> "[F]iduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory. . . . An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter." Gaither v. Aetna 394 F.3d 792 (10th Cir. 2004).

Surely the Defendants, better than the Plaintiff, would know exactly where to go to get the documents. If MetLife or the Plan did not have the documents and therefore were unable to place them in the administrative record or produce them in response to Plaintiff's discovery, it is because neither MetLife nor the Plan wanted anyone to see the papers. That is nothing less than a suppression of relevant evidence, a sanitization of the administrative record.

Respectfully submitted,

 /s/Paul Fleishman

PAUL FLEISHMAN

DATED:  October 7, 2010