Robert K. Renner (155283), rrenner@bargerwolen.com
Scott E. Calvert (210787), scalvert@bargerwolen.com
BARGER & WOLEN LLP
19800 MacArthur Boulevard, 8th Floor
Irvine, California  92612
(949) 757-2800 / Fax:  (949) 752-6313

Attorneys for Defendants
Metropolitan Life Insurance Company and
Northrop Grumman Health Plan

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LESSER,<br><br>                    Plaintiff,<br><br>        vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a corporation; NORTHROP GRUMMAN HEALTH PLAN, an ERISA plan; DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO.: CV 09-5699 RSWL(CWx)<br><br>**DEFENDANTS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial<br>DATE:  October 19, 2010<br>TIME:   9:00 a.m.<br>CTRM:  21<br><br>FAC Filed:  March 11, 2010 |

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

i:\office7\7197\267\10pleadings\14 proposed findings -- final.doc

After consideration of the parties' respective opening and responding trial briefs and the oral argument of counsel provided during the October 19, 2010 Trial of this action, the Court determines that the following facts have been established as uncontroverted in this case:

## STATEMENT OF FACTS

1.      Any finding under this category that is a conclusion of law is also hereby adopted as a conclusion of law.

## Discretionary Authority Under The Plan

2.      The Optional Life insurance benefits at issue are offered through Northrop Grumman Health Plan (the "Plan").  The Plan is established, maintained and sponsored by Northrop Grumman Corporation ("Northrop").

3.      The Plan vests Metropolitan Life Insurance Company ("MetLife")[1] with broad discretionary authority to interpret the terms of the Plan and to make benefit determinations.

4.      Specifically, in a section entitled "Discretionary Authority of Plan Administrator and Other Plan Fiduciaries," the Plan contains the following language granting MetLife discretionary authority:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it

_____

[1]   The Plan and MetLife are referred to, collectively, as "Defendants."

can be shown that the interpretation or determination was arbitrary and capricious.  (118)[2]

## The Plan Requires That Evidence Of Insurability Accompany Decedent's Request To Increase His Life Insurance Coverage Beyond The Basic Coverage Offered By Northrop

5.     Barry Lesser ("Decedent") was hired by Northrop in 1979 (33),[3] continuing his employment until his death on May 21, 2008 (13).  As part of Northrop's benefit package, most employees, including Decedent, "regularly scheduled to work 20 or more hours each week" automatically qualify for Basic Life insurance coverage (equal to one year's salary, rounded up to the nearest $1,000.00) and have the option of purchasing additional coverage through the Optional Life insurance program.  (84-85, 90)

6.     Decedent had basic life insurance coverage of $88,000 (48), and for 27 years, he apparently was satisfied with that level of coverage.  In July 2007, he sought to add optional life insurance coverage, years after his initial eligibility ended.  (1) MetLife is not the recordkeeper for the Plan, and, thus, does not receive enrollment documents.

7.     Decedent is charged with the knowledge that under the Plan, he could not simply choose to increase his coverage by paying additional premiums; rather, he was required to submit evidence that he qualified for such coverage given his physical condition and overall health.  The Plan makes clear that when seeking optional life coverage more than 31 days after initial eligibility (101), a participant

_____

[2]  These numbers refer to the bates-number of the Plan and claim file, with the corresponding prefix and intervening zeros removed.

[3]  Decedent's base earnings at the time of his death were $87,464.00 per year.  (16)

such as Decedent is required to provide evidence of insurability.

8.     Specifically, in a section entitled "ELIGIBILITY PROVISIONS: INSURANCE FOR YOU," the Plan explains that in order to participate in the Optional Life insurance portion of the Plan, a participant must complete the required form, and:

> You must give evidence of Your Insurability satisfactory to Us[4] at Your expense if You are required to do so under the section entitled EVIDENCE OF INSURABILITY.  (91)

The Plan further explains that additional evidence of insurability is required, noting "changes to Your insurance made during an annual enrollment period **will take effect** … [when] … **We determine that You are insurable**, [and] **such insurance will take effect on the date We state in Writing**."  (92; emphasis in original)

9.     The Plan also details the situations when a participant such as Decedent is required to provide "evidence of insurability satisfactory to Us," including, in relevant part:

> 2. if You make a request during an annual enrollment period to increase the amount of Your Optional Life Insurance.
>
> **If You do not give Us evidence of insurability** or the evidence of insurability is not accepted by Us as satisfactory, the amount of **Your Optional Life Insurance will not be increased.**
>
> …
>
> 4. if You make a late request for Optional Life Insurance.  A late request is one made more than 31 days after You become eligible.
>
> **If You do not give Us evidence of insurability** or the evidence of insurability is not accepted by Us as satisfactory, **You will not be covered for Optional Life Insurance.**  (101; emphasis added)

---

[4]  In the Plan, "We," "Us" and "Our" all mean MetLife.  (89)

10.     In addition to the language in the Plan, Decedent was specifically informed of his obligation to provide evidence of insurability less than three months before he attempted to increase his coverage.  (47-53)  On April 11, 2007, Northrop mailed him a document entitled "Health Welfare Annual Enrollment Worksheet" detailing his current coverage and explaining that in order to obtain *any* amount of Optional Life insurance coverage, "Evidence of Insurability is required."  (51)

**<u>Contrary To The Plan's Terms, Decedent Attempted To Increase</u>**
**<u>His Coverage Without Providing Evidence Of Insurability</u>**

11.     In July 2007, Decedent attempted to obtain Optional Life insurance, but failed to provide any evidence of insurability to his employer, Northrop's third-party recordkeeper/administrator or MetLife.

12.     Due to a processing error by Northrop's third-party recordkeeper, premiums were deducted from Decedent's paycheck despite the facts that he never submitted evidence of his insurability, that MetLife never approved his request and that MetLife never informed him in writing that his Optional Life coverage had begun.  (127-128)  Decedent unfortunately passed away while steps were being taken to rectify the processing error, but before the process was complete.  (127)  Once the error was discovered, Plaintiff Robin Lesser ("Lesser") was refunded the $1,779.92 in premiums that had been deducted from Decedent's paychecks.  (120)

13.     Decedent's failure to provide evidence of his insurability is not surprising given the information contained in the claim file that he had numerous ongoing health issues.  His death certificate notes that while the immediate cause of his May 21, 2008 death was "asystole" (*i.e.*, a dire form of cardiac arrest), conditions leading to the cause of death included hypotension, end stage renal disease, diabetes

mellitus, hypercholesterol and chronic sinusitis.  (13)  These are each chronic conditions of which Decedent was undoubtedly aware in July 2007 (less than a year before his death) when he attempted to dramatically increase his life insurance coverage.  Indeed, the death certificate notes that Decedent suffered from renal disease for 4 years and diabetes for 10 years.  (13)  If he had submitted evidence of insurability in compliance with the terms of the Plan, this medical information undoubtedly would have precluded him from obtaining additional coverage.

14.     These premiums were collected by Northrop's third-party administrator, and not either of the named Defendants.  MetLife did not receive from Northrop or its third-party recordkeeper an individual breakdown by active employee for the bulk group premium received.  Likewise, MetLife did not receive from Northrop or its third-party recordkeeper information regarding such individual employees' coverage options.  Therefore, prior to Decedent's death, MetLife was not informed that premiums were being paid on behalf of Decedent, nor was it informed regarding of coverage elections.  Information regarding Decedent's coverage under the Plan was not provided to MetLife until after his death when Lesser submitted her claim for Optional Life insurance benefits.

## Having Never Received (Or Approved) Decedent's Evidence Of Insurability, MetLife Denied Lesser's Claim For Optional Life Insurance Benefits

15.     Following Decedent's death, Lesser submitted claim forms requesting life insurance benefits under the Plan.  (9-12)  (It is undisputed that Lesser is the named beneficiary for any life insurance benefits due under the Plan.)  After reviewing Lesser's claim form, information from Northrop related to Decedent's July

2007 request to enroll in the Optional Life insurance program[5] and the relevant Plan provisions, MetLife informed Lesser, by letter dated September 29, 2008, that while she received $176,000 in life insurance benefits (plus interest), it was denying her request for the additional $512,000 in Optional Life insurance benefits that she sought.  (32-33)

16.     In the letter, MetLife explained that Decedent did not enroll in voluntary (optional) life coverage on his 1979 date of hire, but rather he only recently attempted to increase his coverage to $600,000.  MetLife further explained that "the Northrop Grumman benefits plan requires Statement of Health approval for any amount exceeding 1 times your Base Annual Earnings during a subsequently annual enrollment period," and that this information is "in the [Plan's Summary Plan Description] as well as the enrollment packet he received from the Northrop Grumman Benefits Center."  Under the terms of the Plan, Decedent "was on notice that an election of that nature would require approved evidence of insurability." Thus, Decedent's eleventh-hour attempt to add coverage before his death did not take effect because "[n]either the employer nor the MetLife Statement of Health Unit has any record of such an approval."  (33)

17.     MetLife thus informed Lesser that it was denying her claim for further life insurance benefits, but that under ERISA and the terms of the Plan, she had the right to administratively appeal the initial claim decision.  MetLife also explained what information she should provide in support of her appeal:

> Under ERISA, you have the right to appeal this decision within sixty (60) days after the receipt of this letter.  To do so, you must submit a written request for appeal to MetLife at the address above.  Please

_____
[5]  MetLife is not the recordkeeper for the Plan, and, thus, did not receive enrollment documents.

include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you deem appropriate to enable MetLife to give your appeal proper consideration.  Upon your written request, MetLife will provide you with a copy of the records and/or reports that are relevant to your claim.  (33)

## Contrary To The Plan (And Contrary To ERISA), Lesser Never Pursued An Administrative Appeal Of MetLife's Initial Claim Decision

18.    The Plan documents explain the process by which a claimant can pursue a claim for benefits in a section entitled "FILING A CLAIM."  (112)  In the section entitled "CLAIM SUBMISSION," the Plan then details what happens after the claim forms are submitted.  First, in the subsection entitled "Initial Determination," the Plan explains initial claim review process, as follows:

After MetLife receives your claim for Benefits, MetLife will review your claim and notify you of its decision to approve or deny your claim.
...
If MetLife denies your claim in whole or in part, the notification of the claims decision will state the reason why your claim was denied and reference the specific Plan provision(s) on which the denial is based.  If the claim is denied because MetLife did not receive sufficient information, the claims decision will describe the additional information needed and explain why such information is needed.  **The notification will also include a description of the Plan review procedures and time limits, including a statement of your right to bring a civil action if your claim is denied after an appeal.**  (118; emphasis added)

19.    Next, in a subsection entitled "Appealing the Initial Determination," the Plan outlines the administrative appeal process:

In the event a claim has been denied in whole or in part, you or, if applicable, your beneficiary can request a review of your claim by MetLife.  This request for review should be sent in writing to Group Insurance Claims Review at the address of MetLife's office which processed the claim within 60 days after you or, if applicable, your

beneficiary received notice of denial of the claim. **When requesting a review, please state the reason you or, if applicable, your beneficiary believe the claim was improperly denied and submit in writing any written comments, documents, records or other information you or, if applicable, your beneficiary deem appropriate.** Upon your written request, MetLife will provide you free of charge with copies of relevant documents, records and other information.

MetLife will re-evaluate all the information, will conduct a full and fair review of the claim, and you or, if applicable, your beneficiary will be notified of the decision.

...

If MetLife denies the claim on appeal, MetLife will send you a final written decision that states the reason(s) why the claim you appealed is being denied, references any specific Plan provision(s) on which the denial is based, any voluntary appeal procedures offered by the Plan, and a statement of your right to bring a civil action if your claim is denied after an appeal. Upon written request, MetLife will provide you free of charge with copies of documents, records and other information relevant to your claim. (118; emphasis added)

20.     Lesser did not comply with the terms of the Plan because she never properly appealed MetLife's initial claim decision. While she did correspond with MetLife and file a complaint with the California Department of Insurance ("DOI"), these acts alone, or in concert, do not constitute administrative appeals under the Plan.

21.     Lesser has asserted that she appealed the adverse claim decision by way of her letter dated October 24, 2008; however, the letter is not a proper appeal of the initial denial decision, nor did MetLife understand the letter to be an appeal. (449) The letter does not include the information needed to initiate a proper administrative review of the initial claim decision and is insufficient to put MetLife on notice to adjudicate an appeal of the claim decision. As Lesser was informed in the September 29, 2008 letter (32-33), the Plan requires that Lesser state why she believes "the claim was improperly decided." (118) No such statement is included in the October 24, 2008 letter. Further, nowhere in the letter does Lesser state that she is appealing the claim decision.

22.     Upon learning of MetLife's claim decision, Lesser's then-counsel sent a November 19, 2008 letter to MetLife stating that Lesser "does not agree with [MetLife's claim] determination."  (35)  The letter did not state that Lesser wished to appeal the claim determination, nor did it include any of the information MetLife explained it would need to properly conduct an appeal of the claim decision, including, for example, the reason(s) Lesser believed the claim decision was incorrect.  (35)  Further, no indication is given that Lesser understood she had *already* appealed the claim decision by way of the October 24, 2008 letter.  Indeed, the contrary is more accurate – Jacobs says that Lesser is "currently discussing" this matter with MetLife and Suzanne Valera, Associate Insurance Compliance Officer for the DOI.

23.     The letter thus confirms that, rather than following the claim review procedure set forth in the Plan, Lesser instead chose to lodge a complaint with the DOI.  As instructed by the DOI, MetLife responded to the DOI's inquiry in a November 20, 2008 letter to Lesser, noting that "this correspondence is in response to your inquiry concerning the Group Life Insurance benefit due on the life of Barry Lesser that you filed with the State of CA Insurance Commissioner."  MetLife then explained its prior decision that "based on the records before MetLife, [Decedent] was not covered for Optional life insurance based on the terms of the Plan."  The DOI complaint triggered a response by MetLife to explain its prior decision; it did not trigger a new investigation of the claim like an appeal under the Plan would have triggered.  Nothing under ERISA or the Plan provides that a complaint to the DOI satisfies the claim-review procedures within the parameters set forth by ERISA and by the Plan.

24.     Lesser also corresponded with Northrop regarding her claim and Decedent's payment of premiums prior to his death.  After MetLife learned that

Northrop mistakenly deducted premium payments for the Optional Life insurance coverage, that money ($1,779.92) was refunded to Lesser on December 16, 2008. (121)

25. In addition, on March 3, 2009, the Northrop Grumman Benefits Center sent a letter to Lesser explaining the propriety of MetLife's claim decision:

> Our records indicate that your husband elected to increase the amount of his optional life coverage to $600,000 during the 2007-2008 Annual Enrollment period. Coverage elected during annual enrollment became effective on 07-01-07.
> Under the terms of the Northrop Grumman Health Plan ("the Plan"), eligible employees must provide evidence of insurability (EOI) when Optional coverage is increased to greater than five times annual salary or $600,000, whichever is less. EOI refers to proof that you are in good health at the time you enroll for optional life insurance. When EOI is required, the employee must complete and submit the EOI form to MetLife (the life insurance company). Until the EOI is processed by MetLife and approved by MetLife, optional life insurance coverage will be limited to an amount allowed without EOI. This is clearly indicated in the Summary Plan Description, page 97, copy attached.
> Because your husband increased his optional life insurance coverage without EOI approval by MetLife, his life insurance could not be increased and payroll deductions for the new amount should not have been taken. (169-170)

26. Lesser did not respond to this letter with any statement that she wished to appeal the claim determination. Likewise, she never expressed her belief that she had *already* appealed the claim decision and was awaiting MetLife's adjudication of that appeal.

27. Finally, on March 30, 2009, Lesser wrote to MetLife requesting copies of certain Plan documents. Yet again, Lesser did not state that she wished to administratively appeal the initial claim-denial decision, did not list the reasons she believed the claim decision was incorrect and did not provide new documents or information in support of her claim. (58) Further, Lesser provided no indication that

-10-

she believed she *already* appealed the claim decision and was awaiting a final claim determination by MetLife.

**The Record Does Not Support That Defendants "Sanitized" The Claim File**

28.     Contrary to Lesser's assertions in this litigation, Defendants did not "sanitize" the claim file.  The documents that Lesser alleged were "missing" or "removed" were maintained by MetLife in a separate file regulatory file regarding Lesser's Complaint to the DOI.

29.     MetLife never received a copy of Lesser's "online application" to enroll in Optional Life insurance benefits under the Plan, because any such application would have been received and maintained by Northrop's third-party recordkeeper.

30.     The "original impact list" referenced in the September 2, 2008 email from Northrop's third-party recordkeeper to MetLife (127) was a list created and maintained by Northrop's third-party recordkeeper and was never provided to MetLife.  MetLife was not aware of the error referenced in the email until after Lesser submitted her claim for Optional Life insurance benefits.

31.     Exhibit 5, offered as part of Lesser's Opening Trial Brief, is not a "MetLife computer readout" as Lesser asserts.  The document appears to be a "screen-print" regarding Decedent's coverage, but was not created by MetLife.  Rather, as evidenced by the June 11, 2008 date stamp located on the bottom of the document, MetLife did not receive a copy of this "screen-print" until after Lesser submitted her claim for Optional Life insurance benefits.

**Lesser's Initiation Of This Lawsuit**

32.     Rather than initiating an administrative review, Lesser instead chose to file this lawsuit on August 4, 2009.

**CONCLUSIONS OF LAW**

(1)     Any conclusion under this category that is a finding of fact is also hereby adopted as a finding of fact.

**ERISA Governs The Plan And Lesser's Claim For Life Insurance Benefits**

(2)     Because the Plan at issue in this lawsuit is an employee welfare benefit plan and to the extent otherwise necessary, the relationship between Lesser and Defendants is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

(3)     Under the facts of this case, the federal statutory scheme embodied in ERISA is the exclusive remedy for Lesser.

**MetLife's Claim Decision Is Afforded Full Deference**
**Under The Abuse Of Discretion Standard Of Review**

(4)     The Plan documents – taken as a whole – vest broad discretionary authority with MetLife, such that the "abuse of discretion" standard of judicial review applies to this case. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Abatie v. Alta Health & Life Insurance Company*, 458 F.3d 955 (9th Cir. 2006).

(5)    Even though a "structural conflict of interest" is involved (given MetLife's status as both the evaluator of claims and payor of benefits), because Lesser has presented no evidence of malice, self-dealing or a parsimonious claims-granting history, the level of skepticism with which the Court views MetLife's decision is low.  Accordingly, MetLife' claim decision is entitled to broad deference. *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008); *Abatie*, *supra*.

## MetLife's Claim Decision Was Reasonable, Because It Was Based On Substantial Evidence And Complied With The Terms Of The Plan

(6)    Although the United States Supreme Court in *Firestone* did not clarify or define the terms "abuse of discretion," it did note that "the trustee's interpretation will not be disturbed if reasonable."  *Firestone*, 489 U.S. at 111.  In a recent post-*Glenn* decision, the Ninth Circuit reaffirmed that an ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact.  *Wells v. Reliance Std. Life Ins. Co.*, 285 Fed. Apx. 343, 344 (9th Cir. 2008).  This case confirms that after the *Glenn* decision, the Ninth Circuit's abuse-of-discretion assessment has remained the same as it was dating back to *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996) ("[I]t is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based upon clearly erroneous findings of fact.").

(7)    In *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000), the Ninth Circuit stated that "[a] plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith."  In fact, under an

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

abuse of discretion standard, the question to be asked is *not* whose interpretation of the plan documents is most persuasive, but whether the interpretation the administrator or claim fiduciary used is unreasonable.  *Id.* at 1113, *citing Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600, 606 (9th Cir. 1996); *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1307 (9th Cir. 1986).

(8)     MetLife is entitled to the full benefit of the abuse of discretion standard because its claim investigation was thorough and comprehensive, it properly evaluated the evidence from Lesser and Northrop's third-party recordkeeper, and it did not commit procedural violations.  *Abatie v. Alta Health & Life Insurance Company*, 458 F.3d 955 (9th Cir. 2006); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296 (9th Cir. 1989).

(9)     MetLife decision to deny Lesser's claim for Optional Life insurance benefits because Decedent did not provide evidence of insurability was reasonable because it was based on substantial evidence and complied with the terms of the Plan. *Snow*, *supra*; *Meditrust Fin. Servs. Corp. v. The Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999); *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

(10)     In light of the information presented at the time of its decision to deny Lesser's claim for Optional Life insurance benefits, MetLife's claim determination did not constitute an abuse of discretion, because MetLife did not rely upon any clearly erroneous findings of fact, because its decision was not rendered without explanation and because it did not construe provisions of the Plan in a way that clearly conflicted with its plain language.

## MetLife Was Not Estopped From Enforcing
## The Unambiguous Terms Of The Plan

(11)   MetLife was not estopped from enforcing the unambiguous terms of the Plan.  A claim of equitable estoppel is only available in an ERISA action when the plan provisions are ambiguous *and* oral representations were made regarding the interpretation of the contract.  *Greany v. Western Farm Bureau Life Insurance Co.*, 973 F.2d 812, 821 (9th Cir. 1992); *Jordt v. Clerks and Lumber Handlers Pension Fund*, 2006 WL 228953, *7 (N.D. Cal. January 30, 2006).

(12)   Here, the Plan terms regarding evidence of insurability are unambiguous. Further, Lesser did not prove that either she or Decedent relied on any person's oral representations when attempting to determine whether Decedent was properly enrolled in the Optional Life insurance program.  Because Lesser cannot meet either of the two factors required for estoppel, let alone both, MetLife was not estopped from enforcing the terms of the Plan.  *Greany*, *supra*; *Jordt, supra*; *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993); *Marx v. Loral Corp.*, 87 F.3d 1049, 1052 (9th Cir. 1996).

## *Gaines*, The Primary Case Upon Which Lesser Bases Her Entitlement To Optional Life Insurance Benefits, Is Both Factually and Legally Distinguishable

(13)   *Gaines v. Sargent Fletcher Inc. Group Life Insurance Plan*, 329 F. Supp. 2d 1198 (C.D. Cal. 2004), has no impact on the outcome of this litigation because it is distinguishable in a number of respects, both factually and legally.  First, *Gaines* is distinguishable because while the plan language at issue there was deemed to be ambiguous, here, the Plan's evidence of insurability provisions are unambiguous. Further, *Gaines* involved the admission by the employer's human resources manager

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

that she was unaware of the plan's "evidence of good health" requirements and that employees were not told of the need to supply health information; here, no comparable concession by Northrop exists.

(14)   Also, while in *Gaines*, "none of the information given to Plaintiff specified that a personal health statement was required for enrollment" (including a brochure given to the employee), Decedent was provided with specific information from Northrop in April 2007 explaining that evidence of insurability was required to obtain Optional Life insurance coverage (in addition to the Plan documents spelling out that requirement).  Further, unlike Hartford (the insurer/administrator in *Gaines*), MetLife was never provided (prior to Decedent's death) with a list of specific employees and their respective insurance coverage elections.  In addition, unlike Hartford (which had been sent the enrollment forms), MetLife never received a copy of Decedent's online application.  Finally, while Hartford's claim-denial decision was reviewed *de novo*, the abuse of discretion standard of judicial review applies to MetLife's claim decision.

(15)   Accordingly, *Gaines* does not support Lesser's assertion that she is entitled to Optional Life insurance benefits.

## The Doctrine Of Reasonable Expectations Does Not Apply To Lesser's Claim For Benefits

(16)   The doctrine of reasonable expectations is a doctrine of "insurance contract interpretation" that pertains to exclusionary clauses.  *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir. 1994).  In life insurance policies, exclusionary clauses typically restrict the payment of benefits based on the cause of death.  For example, deaths causes by acts of war or suicide are often excluded from

payment.  *Minton v. Stuyvesant Life Ins. Co.*, 373 F. Supp. 33 (D.C. Nev. 1974).  The provisions upon which MetLife based its denial decision are not exclusionary clauses that otherwise limit coverage available to a claimant.  Instead, the evidence-of-insurability requirements are related to whether a claimant or participant, such as Decedent, had coverage in the first instance.  Accordingly, the doctrine of reasonable expectations does not apply to Lesser's claim for benefits.

(17)   Further, Plan participants are charged with constructive notice of the contents of the Summary Plan Description.  *Schultz v. MetLife*, 872 F.2d 676, 680 (5th Cir. 1989); *Barnes v. Lacy*, 927 F.2d 539, 543 (11th Cir.), *cert. denied*, 502 U.S. 938 (1991); *Castello v. Gamache*, 593 F.2d 358, 360-61 (8th Cir. 1979).  Accordingly, regardless of any error by Northrop's third-party recordkeeper, Decedent is charged with the knowledge that under the Plan, he could not simply choose to increase his coverage by paying additional premiums; rather, he was required to submit evidence that he qualified for such coverage given his physical condition and overall health.

**Defendants Did Not Waive The Plan's Evidence-Of-Insurability Requirement**

(18)   Lesser alleges that Defendants waived the Plan's evidence-of-insurability provisions.  She has the burden of establishing waiver "by clear and convincing evidence that does not leave the matter to speculation."  *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (1994).  She has not met this standard.

(19)   Waiver is the "voluntary or intentional relinquishment of a known right," and acts constituting relinquishment must be committed by the party against whom waiver is asserted.  *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995); *U.S. v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988); *Burdick v.*

*Union Sec. Ins. Co.*, 2009 WL 6541608, *11 (C.D. Cal. 2009).  Thus, because neither Defendant prepared the documents upon which Lesser bases her assertion that Defendants waived the right to enforce the Plan's evidence-of-insurability provisions, they are not evidence of waiver.

(20)   In addition, the Plan explicitly states its terms cannot be modified by documents that are not part of the group contract.  Accordingly, neither emails from Northrop's third party administrator, nor the online application, can "waive" the Plan's evidence-of-insurability requirement.

(21)   Further, a plan fiduciary can only waive the express and unambiguous terms of a plan by failing to invoke a plan provision despite having express knowledge of a determinative fact over a long period of time.  *Berger v. Life Insurance Co. of North America*, 103 F. Supp. 1344, 1349 (N.D. Ga. 2000); *Pitts v. American Security Life Insurance Co.*, 931 F.2d 351 (5th Cir. 1991); *Furleigh v. Allied Group Inc.*, 281 F. Supp. 2d 972 (N.D. Iowa 2003); *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 171 F.3d 634, 645 (5th Cir. 1999); *Gaines*, *supra*, at 1222.  Here, because MetLife was not aware of Decedent's attempt to increase his life insurance coverage until after his death, and invoked the evidence of insurability provisions when it first learned of Decedent's failure to provide such evidence, MetLife did not waive the Plan's evidence-of-insurability requirement.  *Lauder v. First Unum Life Insurance Co.*, 284 F.3d 375 (2d Cir. 2002).

## Lesser Failed To Exhaust Her Administrative Remedies

(22)   Lesser failed to exhaust her administrative remedies as required by ERISA and by the Plan.  Lesser failed to appeal the denial decision because none of her "appeal letters" states the reasons Lesser believes "the claim was improperly

decided" as required by the Plan.  (118)  Lesser therefore failed engage in the required "meaningful dialogue" with MetLife regarding the specific reasons for her disagreement.  *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (explaining 29 C.F.R. § 2560.503-1(f) requires "meaningful dialogue between ERISA plan administrators and their beneficiaries."); *Glaus v. Kaiser Foundation Health Plan*, 2009 WL 2905961, *4 (N.D. Cal. September 8, 2009); *Noble v. Union Bank of California Long Term Disability Benefits*, 2008 WL 3184760 (N.D. Cal. August 4, 2008).

(23)   Lesser's claim for Optional Life Insurance benefits is therefore premature and not ripe for judicial review.  *Amato v. Bernard*, 618 F.2d 559, 566-588 (9th Cir. 1980) (concluding that federal courts have the authority to, and as a matter of sound policy should, enforce the exhaustion requirement in ERISA cases); *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995); *Jordt*, *supra*.

(24)   Contrary to her argument, Lesser's appeal of MetLife's claim decision was not futile or otherwise doomed to fail, and therefore Lesser does not qualify for any of the limited exceptions to the exhaustion-of-administrative-remedies requirement.  *Diaz*, *supra*.

(25)   Under the facts of this case, no Optional Life insurance benefits are owed to Lesser.

(26)   Judgment shall be entered in Defendants' favor consistent herewith.

DATED:  _____

_____
THE HONORABLE RONALD S.W. LEW
UNITED STATES DISTRICT JUDGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Submitted By:

BARGER & WOLEN LLP


By:  /s/ Robert K. Renner
         ROBERT K. RENNER
         SCOTT E. CALVERT
         Attorneys for Defendants
         Metropolitan Life Insurance Company
         and Northrop Grumman Health Plan