O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LESSER, an individual,<br><br>        Plaintiff,<br><br>  v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a corporation; NORTHROP GRUMMAN HEALTH PLAN, an ERISA plan; DOES 1 through 10, inclusive,<br><br>        Defendants. | CV 09-5699 RSWL (CWx)<br><br>**RULING AND ORDER** |

    In this action, Robin Lesser ("Plaintiff") challenges the determination by Defendants Metropolitan Life Insurance Company ("MetLife") and The Northrop Grumman Health Plan (the "Plan") that she was not entitled to her husband's life insurance benefits.

Plaintiff and Defendants MetLife and the Plan have stipulated that this matter will be decided on the basis of the administrative record on file with the Court, the trial briefs submitted by the Parties, and the oral arguments at Trial.  Having considered all the documents and oral arguments submitted in this matter, the Court now **FINDS AND RULES AS FOLLOWS:**

**I.   BACKGROUND**

Northrop Grumman Corporation ("Northrop") offers life insurance for its employees through the Plan.  The Plan is maintained and sponsored by Northrop, and Northrop is listed as the Plan Administrator.  MetLife administers the claims for benefits under this Plan, and issues the group insurance policy to Northrop that funds the benefits.  Employees scheduled to work twenty or more hours per week at Northrop automatically qualify for basic life insurance coverage, with the option to purchase additional life insurance coverage through the Optional Employee Life Insurance Program.

Plaintiff's husband, Barry Lesser ("Decedent"), was employed by Northrop from 1979 until his death on May 21, 2008.  Decedent qualified for basic life insurance coverage in 1979, but did not request additional life insurance until 2007, when Decedent applied online for

optional life insurance coverage in the amount of $600,000, listed as "Option 9" under the Plan. According to a section of the Plan entitled "Eligibility Provisions: Insurance for You," when a participant seeks to increase his or her life insurance coverage more than thirty-one days after the initial eligibility period, which Decedent sought to do, the participant must first submit Evidence of Insurability ("EOI"). If EOI is not provided or is found unsatisfactory, the amount of optional life insurance will not be increased and the participant will not be covered. The Court finds that Decedent did not submit any EOI when he applied for the Option 9 policy, but neither MetLife nor his employer informed him that his application was invalid or not accepted due to the fact he had not submitted EOI.

Moreover, after Decedent applied for this coverage, Northrop began deducting premiums from Decedent's paycheck for the Option 9 coverage, and this continued for ten months until his death. MetLife accepted these premium payments. Northrop also provided Decedent and Plaintiff with a "Health and Welfare Beneficiary Confirmation Notice," dated January 7, 2008, indicating Plaintiff was the sole beneficiary of the Option 9 policy and was therefore entitled to 100% of the benefits under this policy. Furthermore, Northrop also

sent Decedent a "Health and Welfare Annual Enrollment Worksheet," dated April 7, 2008, stating Decedent was covered by the Option 9 plan, with $600,000 provided in coverage. Decedent also received a document called "Paying for your Benefits" which reported the amount that was being deducted from his paycheck for the Option 9 Benefits. As a result of the aforementioned actions, neither Decedent nor Plaintiff were aware that the Option 9 policy was not in effect.

On June 16, 2008, following Decedent's death, Plaintiff sent Defendants a claim for $688,000 in benefits under the Plan: $88,000 for the basic life insurance, and $600,000 for the Option 9 benefits. Plaintiff was subsequently paid $88,000 for the basic insurance, and $88,000 for optional benefits, totaling $176,000.[1]

On September 29, 2008, MetLife sent a letter to Plaintiff ("September Letter") denying her claim for the Option 9 benefits on the grounds that Decedent had never submitted EOI. In this letter, MetLife explained that the terms of the Plan required a participant submit EOI before he or she could be approved for the additional coverage, and because neither the employer nor MetLife

---

[1] Defendants state in their Opening Trial Brief that Plaintiff was "mistakenly" paid $88,000 in optional life insurance benefits.

had any record of this EOI, Decedent's attempt to add this coverage did not take effect.

MetLife further detailed in this letter the procedures Plaintiff could take in order to administratively appeal this decision within 60 days under ERISA:

> Under ERISA, you have the right to appeal this decision within sixty (60) days after the receipt of this letter. To do so, you must submit a written request for appeal to MetLife at the address above. Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you deem appropriate to enable MetLife to give your appeal proper consideration.

Plaintiff then sent a letter to MetLife responding to this denial of benefits to the address MetLife had provided in its September Letter, dated October 24, 2008 ("October Letter"). In this letter, Plaintiff requested that Defendants review several documents relating to Decedent's life insurance benefits, including those that Northrop had sent to Plaintiff and Decedent that confirmed his coverage under the Option 9 policy: the "Paying for your Benefits" document and the Northrop

Grumman Benefits and Welfare Annual Enrollment Worksheet statement.  Plaintiff included these documents in her letter, thanked MetLife for allowing "the opportunity to present these documents for review," asked for a speedy resolution to her claim, and informed MetLife to contact her in case further assistance was needed.

Plaintiff then lodged a complaint with the California Department of Insurance ("DOI"), which led the DOI to inquire with MetLife regarding Plaintiff's complaint.

On November 20, 2008, Defendants sent Plaintiff a letter ("November Letter") that stated that the letter was in response to Plaintiff's inquiry "concerning the Group Life Insurance benefit due on the life of [Decedent] that you filed with the State of CA Insurance Commissioner," and denied the Option 9 benefits again on the basis that Decedent had failed to provide MetLife with EOI.  On December 16, 2008, Defendants processed a refund to Plaintiff of the amount of money in premiums that had been deducted from Decedent's paychecks.

Plaintiff then subsequently filed this present action against Defendants, claiming wrongful denial of the Option 9 benefits.  Defendants counter that Plaintiff has failed to exhaust the Plan's internal administrative remedies and that even if Plaintiff did

exhaust these remedies, MetLife's claim denial was reasonable given that Decedent never submitted EOI.

## II. Analysis

### A. Exhaustion of Administrative Remedies

The Court finds that the life insurance plan at issue here constitutes an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), and accordingly the relationship between Plaintiff and Defendants is covered by this act. 29 U.S.C. § 1001 *et seq*. Under ERISA, every employee benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying claim." 29 U.S.C. § 1133(2). The summary plan description must outline the "remedies available under the plan for the redress claims which are denied in whole or in part . . ." 29 U.S.C. § 1022(b). The purpose of these administrative remedies is "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980).

ERISA does not specifically require administrative exhaustion. Id. at 566 ("ERISA nowhere mentions the exhaustion doctrine"). However, as a general rule, "a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust, 50 F.3d 1478, 1483 (9th Cir. 1995) (citing Amato, 618 F.2d at 566-68). Thus, federal courts have the authority to enforce the exhaustion requirement in ERISA cases, and should ordinarily do so. Amato, 618 F.2d at 568. Generally, courts require there be a "meaningful dialogue" between the beneficiary and the ERISA plan regarding the specific reasons for disagreement. See Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997).

Defendants contend that Plaintiff failed to properly pursue an administrative appeal of MetLife's initial claim decision in accordance with the Plan's procedures, and therefore has failed to exhaust her administrative remedies. Accordingly, Defendants argue the claim decision is not yet ripe for judicial review.

The Court finds that Plaintiff's October Letter sufficiently complied with the Plan's procedures for initiating an appeal. Therefore, Plaintiff properly pursued an administrative appeal of MetLife's initial

claim decision and exhausted her administrative remedies, enabling the claim decision to be ripe for judicial review.

Defendants mainly argue the October Letter did not properly initiate an administrative appeal because it did not specifically state that "the claim was improperly denied," nor did it state that Plaintiff was intending to appeal MetLife's decision. However, this argument is unpersuasive, as the Court finds that such formalities were not required by the Plan's ERISA appeal procedures. The procedures instead state that "[w]hen requesting a review, please state the reasons you or ... your beneficiary believe the claim was improperly denied and submit in writing any written comments, documents, records or other information you or ... your beneficiary deem appropriate." [Decl. Casey, Ex. A at 33]. Therefore, the absence of these clauses in the letter does not conclusively prove that Plaintiff failed to properly appeal MetLife's decision.

The Court finds that Plaintiff's October Letter, taken as a whole, was sufficient to initiate an appeal of Defendants' denial of benefits and put MetLife on notice that Plaintiff wished to request an administrative appeal of the claim decision. Specifically, Plaintiff's October Letter included the

documents necessary to review her claim and requested that they be reviewed by MetLife, both requirements of the ERISA appeal procedures set forth by the Plan. Further, the October Letter was written within sixty days of receipt of Defendants' September Letter denying her claim and was sent to MetLife at the address specified in Defendants' September Letter as the address to which Plaintiff should send an appeal. In addition, Plaintiff thanked MetLife in this letter for allowing her "the opportunity to present these documents for review," and asked for a speedy resolution to the matter. [Pl.'s Opening Trial Brief, Ex. 3]. Finally, the fact Plaintiff included and referenced the above listed documents were sufficient to put MetLife on notice that the reason for Plaintiff's appeal revolved around the fact Plaintiff and Decedent believed that he had been covered under the Option 9 policy. See Young v. UnumProvident Corp., 2002 WL 2027285, *4 (D. Minn. 2002) (finding that plaintiff "for all practical purposes" exhausted her administrative remedies because she had submitted everything needed for her claim and her letter put the insurance company on notice of her intent to seek the contested benefits).

    Accordingly, Plaintiff engaged in the required "meaningful dialogue" with MetLife regarding the

specific reasons for her disagreement. Booton, 110 F.3d at 1463. The Court finds that Plaintiff's October Letter was a proper appeal of Defendants' denial of benefits, and Plaintiff exhausted her administrative remedies. Plaintiff's claim for the Option 9 benefits is therefore ripe for review.

**B. Plaintiff's Claim for the Option 9 benefits**

Plaintiff asserts two main arguments as to why she is entitled to the Option 9 benefits: 1) Defendants have sanitized the administrative record, and 2) Defendants have waived their right to enforce the EOI requirement and accordingly are precluded from denying her the Option 9 benefits on this basis.[2]

    1. Sanitization of the Administrative Record

Plaintiff spends a substantial amount of time in her briefs arguing that Defendants have sanitized the administrative record. Plaintiff accuses Defendants of hiding documents, failing to produce documents in a timely manner, and general misconduct in terms of their handling of the administrative record.

The Court finds that it cannot make a determination as to whether Defendants have sanitized the record, as

---

[2] Plaintiff also makes an argument that she and Decedent had a reasonable expectation of coverage under the Option 9 policy due to the confirmation forms she received from Northrop and the fact premiums were deducted from Decedent's paycheck. However, this argument is not persuasive in determining the outcome of this case, and therefore it will not be addressed.

Plaintiff does not put forth any affirmative evidence that proves Defendants wilfully hid documents or took action that would constitute sanitization of the administrative record.  Moreover, Plaintiff does not explain or put forth any case law showing how Defendants' alleged sanitization of the record necessitates a finding by this Court that she is entitled to the benefits on these grounds.

However, the Court finds that the overall fact Defendants have engaged in a piecemeal production of evidence to the Court, demonstrated by the fact that Defendants submitted a revised administrative record two days after the deadline for filing opening trial briefs, is indicative of how Defendants handled the insurance coverage for the Northrop employees, and affects the credibility of Defendants in this action.

Ultimately, because Plaintiff does not provide evidence to substantiate these claims, the Court cannot make a determination that Defendants have sanitized the administrative record.

### 2.   Defendants Waiver of the EOI requirement

The Court finds that Defendants have waived the right to enforce the EOI requirement and Plaintiff is accordingly entitled to the Option 9 benefits.  Waiver is the "voluntary or intentional relinquishment of a

known right." <u>Gaines</u>, 329 F. Supp. 2d at 1222. Where an insurer, with knowledge of the fact an insured did not meet the particular requirement for coverage under a policy, by "acts, declarations, or dealings leads [the] insured to believe that he or she is protected under the policy, such acts, transactions, or declarations operate as a waiver" of the right to deny coverage based on the alleged failure to meet that requirement. <u>Swint v. Protective Life Ins. Co.</u>, 779 F. Supp. 532, 560 (S.D. Ala. 1991)(citation omitted). Courts have found an application of the waiver doctrine to be appropriate in ERISA cases when an insurance company has continued to pay benefits or accept deductions with the knowledge that the insured did not meet the particular requirements for that insurance policy. <u>See, e.g.</u>, <u>Burger v. Life Ins. Co.</u>, 103 F. Supp. 2d 1344, 1348 (N.D. Ga. 2000) (holding that an insurer waived its right to enforce provisions of its policies when it paid benefits to the insured with the knowledge that the insurer was not complying with a relevant insurance requirement).

   Defendants argue that the third-party administrator ("TPA"), Hewitt, had the responsibility of managing and reviewing all of the policies, and MetLife had no actual knowledge from Northrop or Hewitt that Decedent was

enrolled in the Option 9 policy without having submitted EOI or that deductions were being taken out of his paycheck. MetLife tries to rely on the fact that the administrative process is set up in a compartmentalized manner to claim it was not responsible for the errors that occurred, and did not have knowledge of Decedent's coverage issues.

However, this argument is unpersuasive. MetLife was ultimately responsible for the actions of Northrop, the plan administrator, and Hewitt, given Hewitt was hired by Northrop and MetLife permits Hewitt to underwrite, manage, and review all policies to ensure they comply with the Plan requirements. MetLife therefore cannot rely on a compartmentalized system to escape responsibility here, and the Court finds that the actions taken constitute a waiver. Decedent enrolled in the Option 9 policy without submitting any EOI, yet after Decedent was allowed to enroll in this policy Northrop sent multiple forms to Decedent and Plaintiff that stated, in clear language, that he was covered under the Option 9 Plan and Plaintiff would receive 100% of these benefits. Premiums were deducted from Decedent's paycheck for this policy for a period of ten months, and MetLife accepted these premiums. Moreover, Decedent was never informed by MetLife, Northrop, or

Hewitt that there was an issue with his coverage or that he needed to submit EOI in order to qualify for the benefits.

In addition, given MetLife's broad discretionary authority over the Plan, including the discretion to grant or deny claims and review benefits requests, the Court finds that it has a burden here to act as a fiduciary to the participants of the Plan. See 29 U.S.C. § 1002(21)(A); see, e.g., Jefferson-Pilot Life Ins. Co. v. Krafka, 50 Cal. App. 4th 190, 197 (1996) (finding plaintiff insurance company to be an ERISA fiduciary because it exercised broad discretionary authority over the plan's management and administration including the discretion to grant or deny claims and to review denied benefits requests).

In Swint v. Protective Life Insurance Company, the defendant insurance company, an ERISA fiduciary, had denied coverage benefits to the dependent of the plaintiff on the basis that he was not eligible for these benefits. Swint, 779 F. Supp. at 532.  The defendant had originally paid the dependent's coverage benefits due to a confusion over the dependent's status, and continued to pay the benefits even after it was fully informed of the information regarding the status of the dependent. Id. at 560.  The District Court for

the Southern District of Alabama found that the defendant had therefore waived its right to deny coverage benefits to the dependent on the basis of ineligibility because the company had "ample opportunity, as well as a duty, to investigate the merits of [plaintiff's] eligibility and claim prior to paying benefits."  Id.  Because the defendant failed to do this, and paid benefits even after it had knowledge that the dependent was not eligible for the benefits, the Swint court found that the defendant relinquished its right to deny this coverage.  Id.

Here, MetLife, like the defendant in Swint, had a duty as a fiduciary to investigate the merits of Decedent's eligibility for the optional life insurance policy before accepting the premiums and to inform him that he did not qualify for the policy.  MetLife failed to investigate the merits of Decedent's eligibility prior to accepting the deductions, and it cannot now point to the compartmentalized administrative process in an attempt to escape responsibility and claim lack of knowledge.  Furthermore, MetLife cannot now claim that the procedures in place were insufficient to provide MetLife with notice of potential claim issues given

MetLife's burden here to act as a fiduciary and its duty to investigate.[3]

Ultimately, Plaintiff was led to believe that Decedent was protected under the policy by Defendants "acts, declarations, or dealings." Swift, 779 F. Supp. at 560. MetLife accepted deductions from Decedent's paycheck for the Option 9 policy for a period of ten months and forms were sent to Decedent and Plaintiff by the plan administrator that confirmed Decedent's coverage under the policy, creating an expectation that Decedent would be covered under the policy. These acts, combined with MetLife's fiduciary duty, support a finding here that Defendants have waived the EOI requirement and are precluded from relying thereon in denying Plaintiff the Option 9 benefits. Id.; see Gaines, 329 F. Supp. 2d at 1222 (holding defendants' employer and plan administrator and insurer waived the right to require a personal health statement when defendants knew plaintiff had purchased coverage without having submitted this statement, and received and accepted payments "without giving any indication that

---

[3] Notably, the DOI warned MetLife about this process in its December 5, 2008 letter, stating that "MetLife does not have appropriate procedures set in place to insure that complete applications are received prior to the binding and acceptance of the optional coverage" and therefore MetLife cannot inform an applicant of any potential insurance coverage issues when issues such as the one present here occur.

17

[he] had failed to comply with [the] precondition [for] obtaining ... coverage").

In sum, the Court finds that Defendants have waived their right to deny Plaintiff the benefits due under the Option 9 policy based on the EOI requirement. Therefore, the Court finds that Plaintiff is entitled to the Option 9 benefits.

For these reasons, the Court finds in favor of Plaintiff Robin Lesser in this action, in accordance with the terms of the judgment filed this same day.

DATED: November 24, 2010

**IT IS SO ORDERED.**

RONALD S.W. LEW
                              
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge